The Arkansas National Bank of Hot Springs *v.*

Martin, Admr.

Opinion delivered January 12, 1914.

1. Action for money had and received—lies when.—Where one has in his possession money which belongs to another, the law implies a contract that he will pay it over to the rightful owner on demand. (Page 584.)

2. Action for money had and received—fraud—notice.—Where plaintiff was swindled out of a check, and the check was sent through defendant's bank for collection, and the bank received notice of plaintiff's rights while it held possession of the funds, *held*, the bank had no right to pay out the money collected to another party, and an implied promise arose to account to the plaintiff as true owner. (Page 585.)

3.   ACTION FOR MONEY HAD AND RECEIVED—FRAUD—NOTICE—DEFENSE.—
     Plaintiff was swindled out of check for a large amount of money.
     One S. deposited the check with defendant bank for collection.
     The amount of the check was collected through defendant's cor-
     respondent bank outside the State. While the defendant held
     the money plaintiff put it on notice of the facts. S. brought re-
     plevin for the money, and secured an order of delivery for the
     amount of money, and defendant paid the same. *Held*, on an
     action by plaintiff against defendant, the payment to S. in the
     replevin suit is no defense to plaintiff's action. (Page 586.)

4.   BILLS AND NOTES—SUBSEQUENT HOLDER—INNOCENT PURCHASER—BUR-
     DEN OF PROOF.—Where plaintiff was induced by fraud to part with
     a check, the burden is upon a subsequent holder of the check to
     show that he is an innocent holder for value. (Page 589.)

5.   ACTION FOR MONEY HAD AND RECEIVED—FRAUD—DEFENSE.—Where
     plaintiff was swindled out of a check, and the same was placed
     in defendant bank for collection, and with notice defendant paid
     the amount of the check to a third party, the defendant can not,
     in an action against it by plaintiff to recover the amount of the
     check, plead as a defense an agreement of release, to which it
     was not a party, signed by plaintiff and one of the parties who
     swindled him. (Page 589.)

Appeal from Garland Circuit Court; *Calvin T. Cotham*, Judge; affirmed.

*Rector & Sawyer*, for appellant.

1.   Appellee is not entitled to recover in an action
for money had and received upon the issue joined in the
pleadings. If guilty, the bank is guilty of a *tort* only, and
the action should have been for damages. 69 Ark. 209;
27 Cyc. 881; 22 Ala. 125; 113 Cal. 97; 27 Cyc. 849; 4 *Id.*
353; 22 Vt. 624; 50 *Id.* 297; 20 Kan. 235; 82 Am. St. 207;
2 Greenl. Ev. (16 ed.), § 108, notes; Am. Ann. Cas. 1913a,
932; 17 Ark. 599; 31 *Id.* 158.

2.   Possession of commercial paper is evidence of
ownership, and the burden is on the one who assails the
possession (42 Ark. 65), and knowledge of a fraud must
be proved. 51 Am. St. 479; Boles on Banking, 624; 27
Cyc. 859-882; 16 Peters, 1; 20 Howard, U. S. 343; 29 Pa.
St. 356; 24 Wend. 387; 125 Am. St. 802; 2 Wall. 121.

3.   The release acquitted defendant of liability. 20
Ark. 583; 75 *Id.* 58; 2 Parsons, Cont. (8 ed.) 492-610;
67 Ark. 553.

4. A release of one tort-feasor is a release of all. 38 Cyc. 488, notes; 11 Am. St. 905; 24 *Id.* 505; 92 *Id.* 864; 24 Ark. 543.

5. The order of delivery was not void on its face. 21 Am. Dec. 181; 47 Am. St. Rep. 234-5; Freeman on ·Ex., § 103. It was the duty of the sheriff to execute it. 34 Cyc. 1463; 34 Ark. 105; 71 *Id.* 236; 37 *Id.* 554; 50 *Id.* 446; 47 *Id.* 31.

6. A bank secures no title to an instrument "for collection." The title remains in the customer. 77 Am. St. 614; 93 U. S. 385. After collection the bank was indebted to Speer. 42 Ark. 65; Law of Deposits, § 13; 1 Green's Dig. Am. St. Rep., § 73, p. 300; 101 N. Y. 570.

7. No fraud or gross negligence was shown on the part of the bank, and Piper was a stranger to the bank. 39 Am. St. 172; 35 *Id.* 822; 44 Ga. 182; 38 Am. St. 766, and notes.

8. The money was taken by due process of law. 5 Cyc. 199, 200; 74 Mo. 351.

*Martin & Wootton* and *Stambaugh & Fowler,* for appellee.

1. The burden was on appellant to show that Spear or it was a *bona fide* holder. 8 Cyc. 236; 13 Ark. 150; 48 *Id.* 454; 3 S. W. 805. One who suspects, or ought to suspect, is bound to inquire. 165 N. Y. 281; 52 L. R. A. 796.

2. Replevin would not lie. 24 A. & E. Enc. Law, 481; 66 Conn. 500; 92 Ind. 570; 44 N. Y. 445; 28 Mo. 95. The writ was void on its face. 42 Atl. 355; 37 Wis. 196; 63 N. E. 907; 28 Mich. 607; 13 So. 240; 36 Ark. 268. A void writ is not enforceable. 35 Cyc. 1745. The bank delivered the money at its peril. 9 L. R. A. 438; 46 Cal. 553; 20 Enc. Law (2 ed.) 816; Mechem on Public Officers, § 746.

3. *Assumpsit* was the proper action as for money had and received. 13 N. W. 42; 27 Cyc. 849, 857, 864; 65 Ark. 222; 4 L. R. A. 368; 70 L. R. A. 554; 69 S. E. 1012; 32 L. R. A. (N. S.) 996; 17 Ark. 559; 31 *Id.* 158; 7 Enc. Pl. & Pr. 369.

4. The release was no defense. 34 Cyc. 1077; 65 Ark. 27; 44 S. W. 218; 9 Cyc. 372-3.

5. The relation of debtor and creditor never existed between the bank and Spear, until the money was collected and credited. Before this the bank had notice. 69 N. W. 49; 5 Cyc. 493.

McCULLOCH, C. J. The plaintiff, Ferdinand Piper, instituted this action in the circuit court of Garland County against defendant, the Arkansas National Bank, of Hot Springs, to recover the amount of a check drawn by him on a bank at Fargo, North Dakota, which was deposited for collection with defendant and collected. The check was drawn to plaintiff's own order and endorsed in blank, and he claims that he was induced to part with the check through a swindling device of two men whom he met in Hot Springs. The check was for the sum of $10,200, and was forwarded for collection through defendant bank and collected.

Plaintiff recovered judgment for the amount in the trial below, and defendant appealed.

The facts, so far as they are material to the questions presented on this appeal, are undisputed. Plaintiff lived at Fargo, North Dakota, and seems to have been a man of some means. He had property there, and also in Cuba. In December, 1912, he started on a trip to Cuba, and stopped at Hot Springs for a short visit. On his arrival there he met in a restaurant a stranger, who gave his name as Hammond, and who invited him to go out to the ostrich farm. After making a short visit to the ostrich farm and just as they came out, Hammond introduced him to a man named Miller, who claimed to be connected with what is termed a "commission house" near by. The place was really a pool room for betting on fake horse races. Miller claimed that his uncle was the proprietor of the place and was a very rich man, and furnished him advance tips on the winners of each race. Hammond and Miller were evidently acting together for the purpose of swindling the plaintiff, and they induced him to go to the so-called commission house and bet on a

horse race, Miller giving plaintiff a tip on the horse that was to win. Miller and Hammond were to have a share in the winnings. Plaintiff gave checks aggregating $12,-000, including the one involved in this suit, and bet that amount on the horse designated by Miller. He was given . odds of 3 to 1, and won the bet, his winnings being the sum of $36,000. When they called for the money, payment of the bet was refused on the ground that only bets made in currency were allowed, and that payment would not be made until the checks which plaintiff had put up should be paid. The checks were in the hands of a clerk or bookkeeper of the concern—evidently a confederate, and it was agreed that they should be forwarded for collection, and, when paid, the plaintiff should receive the $36,000 which had been won on the horse race. The sum of $1,800 was in the form of traveler's checks, upon which there was no recovery, and need not be further mentioned in this case. The check on the bank at Fargo was delivered by Hammond or Miller or some of their confederates to one Spear, who, in turn, placed it with defendant bank for collection, endorsing his initials thereon for identification. Plaintiff remained in and about Hot Springs at the request of Miller and Hammond in order to collect his winnings after the check should be paid, and in a few days they reported to him that the check had been paid, and invited him out to the commission house to get his winnings. When they got there, Miller told plaintiff that the money would be ready for him in about fifteen minutes, and in the meantime he gave plaintiff $500 with instructions to bet it for him on a certain horse which he said he had received information would win second place in the race, and the instruction was to bet it on that horse to win second place. He did so, and won the bet, turning the winnings over to Miller. Hammond bet the full amount of plaintiff's winnings on the same horse race, but, instead of betting that the horse would run second, he bet that the horse would run first, and thus lost the bet. This, of course, was just a play on the part of Hammond and Miller to swindle

the plaintiff and induce him to believe that he had fairly lost the money, and he seems to have accepted that situation at the time. He states that when Hammond reported the loss of the $36,000, Miller cried and offered to make restitution to him as far as he could. Miller claimed that he had $25,000 in New York and that he would accompany plaintiff on the trip to Cuba as far as Jacksonville, Florida, and would send Hammond to New York to arrange to get the $25,000. Miller did accompany plaintiff as far as Jacksonville, but on their arrival there plaintiff seems to have begun to realize that he had been swindled out of his money, and separated himself from Miller, and went to Key West, Florida, where he sent a telegram, addressed to defendant bank at Hot Springs, in the following words:

"Don't pay check that was sent from National Bank of Fargo, N. D., and Ferdinand Piper, $10,200. I am going to Cuba. When I come back I will get the money.

(Signed)                              "Ferdinand."

That message was sent, and was received by defendant bank, on December 23, 1912, after the check had been paid by the Fargo bank and report of the collection had been made to defendant through its St. Louis correspondent. The officers of defendant bank accepted this telegram as notice that there was something wrong about the ownership of the funds thus collected and declined to pay the money over to Spear, who was a regular customer of the bank, and on December 28 Spear instituted an action of replevin against the bank to recover the sum of $10,200 in currency. An order of delivery was issued, directed to the sheriff of the county, commanding him to take from defendant, the Arkansas National Bank, $10,-200 "in money, currency of the United States." The sheriff proceeded to serve the writ by making demand upon the bank for delivery of funds in the amount named, and the bank, in lieu of delivery of the funds, gave the sheriff a certificate of deposit, and placed the same to the credit of the sheriff. The sheriff subsequently gave Spear a check on the bank for the amount, and it was

placed to Spear's credit. That case came on for trial, and the court sustained a demurrer to the complaint and rendered final judgment in favor of defendant bank against Spear and the sureties on his bond. The record in that case was introduced in evidence in this and is in the record on this appeal.

A day or two after the receipt by the bank of plaintiff's message, it received another telegraphic message, same purporting to be from plaintiff, sent from Tampa, Florida, and directed the bank to ignore the former telegram; but plaintiff testified that he did not send this message, and there was no testimony that he did send it.

The question, whether the bank was put upon notice as to plaintiff's ownership was fairly submitted to the jury, and the verdict is conclusive on that question.

The other undisputed facts establish the liability of the bank to the plaintiff, and the assignments of error in regard to the charge of the court to the jury need not be discussed.

This is not an action sounding in tort, but is one corresponding with the common law action of *assumpsit* for money had and received. Counsel for defendant are in error in their insistence that this is either an action in tort, or upon implied contract arising out of an alleged wrongful act of defendant. The action does not involve any wrongful act of the defendant, except the failure to pay over the money, but it is based upon the contention that the plaintiff was induced to part with the check through fraud of another person; that the title, for that reason, never passed out of the plaintiff, and that the bank received and had in its possession, with notice, the proceeds of the collected check, from which the law implied an agreement to hold the money for plaintiff's use and pay it over to him on demand. Therefore, the question of waiving the tort and suing upon implied contract is not involved in this case.

Plaintiff's right to sue for the money received is very clear, and is based upon the plain principle that, where one has in his possession money which belongs to

another, the law implies a contract that he will pay it over to the rightful owner on demand. That principle is clearly stated by the Supreme Court of Minnesota in the following language:

"An action for money had and received can be maintained whenever one man has received or obtained possession of the money of another, which he ought, in equity and good conscience, to pay over. This proposition is elementary. There need be no privity between the parties, or any promise to pay, other than that which results or is implied from one man's having another's money, which he has no right conscientiously to retain. In such case the equitable principle upon which the action is founded implies the contract and promise. When the fact is proved that he has the money, if he can not show a legal or equitable ground for retaining it, the law creates the privity and the promise." *Brand* v. *Williams,* 29 Minn. 238, 13 N. W. 42.

That principle was announced by this court in the early case of *Hutchinson* v. *Phillips,* 11 Ark. 270, where it was said that "to maintain *assumpsit* for money had and received, plaintiff must show that defendant has actually received his money, or prove such facts as to raise a fair presumption that he has received it."

The same principle has been announced and applied in other cases. *Peay* v. *Ringo,* 22 Ark. 68; *Snapp* v. *Stanwood,* 65 Ark. 222.

Numerous other courts have announced the same doctrine in cases cited on the brief.

The facts of this case bring it within that principle. The undisputed evidence shows that plaintiff was swindled out of the check; that it was sent for collection through the defendant bank, and the latter received notice of plaintiff's rights while it held possession of the funds. The bank, under those circumstances, had no right to pay it out to another, and an implied promise arose to account to the plaintiff as the true owner.

Counsel for defendant rely upon the announcement of this court in the case of *German Bank* v. *Himstedt,* 42

Ark. 64, where it was said that "a bank receiving a sum of money of a depositor is bound to pay it to him or his order, and can not refuse payment on the ground that it is the property of another."

That principle is correct in a case calling for its application; but it has no application to a case of this sort, where a check, which had been stolen or received fraudulently, was deposited with the bank for collection and later the bank received notice as to the true ownership. This does not present the case of a bank's right to dispute the ownership of money which has been deposited. The proof does not show that the proceeds of the check had been credited to the account of Spear at the time the bank received notice of plaintiff's claim thereto; but we do not regard that question as important in determining whether plaintiff has a right to recover the funds, for, if the bank received notice of plaintiff's rights before it paid out the funds, its liability to the plaintiff as true owner is established.

Again, it is insisted that the bank is protected by the order of delivery in the replevin suit of Spear. The contention is that the bank was the agent or bailee for Spear, the person who placed the check for collection, and that the funds were taken from the bank under legal process. It is argued that, even though the bank could defend in the replevin suit on the ground that that action could not be maintained for proceeds of the check, which were not held as a separate fund capable of identification, yet the order of delivery was valid on its face and protected the bank from suit by another claimant of the fund.

This contention might be tenable if the funds had been separately held by the bank and described in the order of delivery; but, unfortunately for that contention, the funds were not so held, and the identical funds were not described. It was merely a suit by Spear against the bank to recover possession of $10,200 in money. The bank had never received any specific funds, according to the proof in this case, but the amount was credited by

the bank's correspondent in St. Louis, through whom the collection was made, and was merely accountable to the owner of the check for a sum sufficient to cover the amount thereof. The order of delivery merely directed the sheriff to take that sum of money from the defendant and deliver it to Spear, and the defendant, in responding to the writ, handed over that much of its own money, and not that which belonged to the plaintiff. It had, according to the proof adduced in this case, a good defense against the replevin suit, and it is not protected against plaintiff's claim by the plea that that sum of money was taken out of its vaults by the sheriff under the order of delivery in Spear's favor.

The question whether or not the writ was void does not arise in this case. The sheriff may, or may not, have had the right to go into the vaults of defendant and take out that much money; but if he could do so under the writ, it was the money of the defendant, and did not diminish, or absolve, the liability of the defendant to the plaintiff for the money which it was bound to hold for him.

Another contention is that the proof does not show whether Spear was an innocent purchaser of the check.

The proof does show conclusively that plaintiff was induced by fraud and deception to part with the check, and that shifted to a subsequent holder the burden of showing that he was a holder for value. *Tabor v. Merchants National Bank,* 48 Ark. 454.

The bank was not an innocent holder itself, but merely received the check for collection, and in order to defend under Spear's title the burden was on it to prove that Spear was a holder for value after it was shown that the plaintiff had been induced by fraud to part with the check. This leaves out of account the question whether or not the check is controlled by sections 3690-1, Kirby's Digest. We need not decide the effect of that statute.

There is still another feature of the case which learned counsel for defendant rely on and argue with

great earnestness. When the plaintiff came back from his trip to Cuba, he went to Hot Springs to investigate and try to get the return of his money. He went to Chicago in company with an attorney to search for Hammond. He was told that Hammond could probably be found there. He and the attorney found a woman who claimed to be Hammond's niece and claimed authority to act for him, and they entered into a written agreement as follows:

"Know all men by these presents: In consideration of the payment to me of the sum of five thousand dollars, I, Ferdinand Piper, of Fargo, N. D., hereby acknowledge full payment and satisfaction of a certain obligation or draft in the sum of ten thousand, two hundred dollars, purporting to have been drawn by me through the Arkansas National Bank, of Hot Springs, Ark., on the Fargo National Bank, of Fargo, N. D., and paid by said last mentioned bank on the 16th day of December, 1912, by the remittance of exchange drawn on the National Bank of Commerce, of St. Louis, Mo. This instrument is intended as a release of all persons except one William Miller, and an alleged commissioner, whose name is unknown to me, but who operated a commission house in Hot Springs, Ark., in December, 1912, and against whom I still retain any rights I may have legally by reason of their connection with the cashing of said draft; but as to all other persons this instrument is the full and clear release and discharge. Given under my hand at Chicago, Ill., on this 27th day of January, 1913.

(Signed)                    "Ferdinand Piper."

Two thousand dollars of the sum recited in the release was paid to plaintiff, and a note was executed to him for the balance, but that has never been paid.

It is insisted that the release evidenced by that instrument, if free from fraud, inured to the benefit of the defendant and extinguished its liability for the funds in its hands.

Counsel for defendant requested the court to give an instruction to the effect that, if plaintiff signed the re-

lease introduced in evidence, he can not recover in this action, unless the release was obtained from him by fraud.

The court refused to give that instruction, but gave another submitting the question of fraud, and also the question of the intention of the parties, whether they intended the release to extinguish the liability of defendant.

We will not discuss those instructions, for we are of the opinion that, according to the undisputed evidence, the defendant can claim no benefit under the release. It was not a party to the instrument and paid no part of the consideration. Nor was there any privity between defendant and Hammond, whose agent negotiated the release. Hammond or Miller, or one of their confederates, turned the check over to Spear, and he, in turn, delivered it to the bank.

The principle that the release of one tort-feasor operates as the release of all has no application for the simple reason that the defendant is not a joint wrong-doer with the parties who swindled plaintiff out of the check. As before stated, the bank's liability to plaintiff is not based upon any wrong done by it, but upon an implied promise to account to plaintiff for his funds which the bank had in its possession. The liability of the bank is separate and distinct from that of the wrong-doers who swindled him out of the check. At the time he executed the release he had a separate claim against the bank and against the parties to whom he had delivered the check, but the liability was separate, and the release of one did not release the other.

The release was not a contract made for the benefit of the bank under which it could assert any rights, because of the fact that there was no privity between it and Hammond so far as concerns their respective liabilities to the plaintiff. *Thomas Mfg. Co.* v. *Prather,* 65 Ark. 27.

Our conclusion, therefore, is, that the liability of the bank to the plaintiff is established by undisputed testimony, and that the judgment was correct.

The question suggests itself, whether the plaintiff should be entitled to recover the full amount held by the bank, or, whether the $2,000 paid by Hammond should be credited. That question has not been raised or argued, but it suggests itself and should not be ignored.

The plaintiff had separate causes of action against the bank and the other parties, but was entitled to only one satisfaction. But it appears from the proof in this case that the $10,200 for which the bank is liable to plaintiff is not the full extent of plaintiff's right of recovery against Hammond and the other parties. There were other checks for $1,800 which are not included in this judgment, and they, together with other expenses incurred by plaintiff in his effort to secure his stolen money, would be sufficient to absorb the amount received from Hammond. At any rate, plaintiff's receipt of that amount from Hammond does not reduce the amount for which defendant is accountable for the money which it has in its hands belonging to him. It devolved on defendant to establish a payment by Hammond on this particular indebtedness before it can claim a credit. The judgment of the circuit court is therefore affirmed.

HART, J., concurs.