Diane CLARK *v.* FARMERS EXCHANGE, INC.

01-475                                          61 S.W.3d 140

Supreme Court of Arkansas
Opinion delivered November 29, 2001

*Stephen Lee Wood, P.A.*, by: *Stephen Lee Wood*, for appellant/ cross-appellee.

*Paul L. Davidson* and *Boyer, Schrantz, Rhoads & Teague, PLC*, by: *Ronald L. Boyer* and Johnnie Emberton Rhoads, for appellee/ cross-appellant.

JIM HANNAH, Justice. This case concerns an action under the Arkansas Civil Rights Act. Appellant Diane Clark asserts the circuit court erred when it denied her postjudgment motion to transfer her action to chancery court for assessment of additional damages in equity.[1] Clark selected the circuit court as her forum and tried her case to a jury, which she asked to determine liability and damages. She made no attempt to transfer the case to chancery until after she had proceeded to final judgment in the case. If the courts had concurrent jurisdiction, Clark would have had the right to apply to either. When she made the choice of circuit court, as she clearly did by trying the case to completion there, she selected the forum, and a decision of the circuit court is binding on her and is *res judicata*. The denial of the postjudgment motion to transfer to chancery was not error.

Cross-Appellant Farmers Exchange, Inc. (the Exchange) alleges the jury verdict must fail because it is not supported by substantial evidence. Significant evidence was presented by both sides as to what occurred. The jury was left to decide who was telling the truth, and the jury awarded Clark $12,600. The evidence apparently believed by the jury proves the facts beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. The jury verdict is supported by substantial evidence. We affirm.

*Facts*

At the time of her termination, Clark was general manager of the Farmers Exchange. She had been employed by the Exchange for seventeen years, having held the position of general manager for

---

[1] Pursuant to the passage of Arkansas Amendment 80, which went into effect on July 1, 2001, our state courts are no longer separated into chancery and circuit courts. Rather law and equity has been merged and the courts have been merged and now carry only the designation of "circuit court." Because law and equity have been merged, the circuit courts can award not only legal remedies, but also traditional equitable remedies. In the future, individuals will not have to elect in which "court" to file their lawsuit.

about a year. Clark alleges that although she was diagnosed with multiple sclerosis in 1992, and the Exchange was aware of her condition from that time, her symptoms never affected her job performance. Further, she alleges that she was never told that her job performance was a concern.

Several weeks before her termination in February 1999, Clark was placed on a ninety-day medical leave by the Exchange. The Exchange told her the leave was to allow her to recuperate and return to work. Clark alleges she never asked for this leave and that her doctor never recommended such a leave. She additionally asserts that when she was told to take the medical leave, nothing was said about her job performance, and additionally, that even when she was terminated some weeks later, again, nothing was said about her job performance. Thus, Clark alleged her termination was based upon her physical disability and that she thereby suffered discrimination in employment.

The Exchange asserts Clark was a valued employee up to and including her promotion to the position of general manager, but that shortly thereafter in 1998, Clark began to experience serious physical problems, personnel problems with workers, and problems with the board of directors. Board members testified that they noticed Clark was becoming unable to see well enough to deal with facts and figures, and that she was becoming unable to speak with enough clarity to communicate in board meetings or effectively run the business. The members of the board became concerned about the quality of operation of the Exchange under Clark's management.

According to the Exchange, Clark was terminated because of incompetent management. They assert more specifically that she was unable or unwilling to perform her duties in an adequate fashion. Board member Mr. Glenn Featherston testified to problems with the advertising budget, which he stated the board asked Clark to reduce, and instead she increased. He also testified that she was instructed to pay down a bank note, but she did not. Featherston additionally testified that the board was concerned about an unusually high turn over in employees and in a failure to properly train and cross train employees. Featherston testified further that Clark was given specific instruction on declining further credit to certain accounts, and she failed to comply. The board believed that by November 1998, Clark simply was not functioning, and they had to do something. They decided to place Clark on a ninety-day sick

leave with pay and benefits to allow her to see if she could recuperate. Assistant Manager Jim Patterson was asked to serve temporarily as manager in Clark's absence and was compensated therefore. For this ninety days, the Exchange paid two general managers. Clark was to take the time off and see if she could recuperate. However, according to Featherston, Clark chose instead to come to the Exchange and interfere in management and employee supervision rather than take the time off as instructed. As a result, four of the nine employees told Patterson they would not continue in employment if Clark returned. Again, according to Featherston, Clark was told to allow Patterson to run the Exchange, and she would not do so. At a board meeting in February 1999, it was decided Clark should be terminated. Clark disputed these events in her testimony when she took the stand.

In 1992, Clark first experienced an inability to move her right hand, and then she suffered some form of light seizures. She was diagnosed with multiple sclerosis. The Exchange was aware of Clark's illness from the beginning. It appears that with medication, the symptoms were kept in abeyance until 1998. At this point Clark began to suffer substantial problems from the disease. It is clear her illness played a role in the problems that gave rise to her termination. As noted, board members testified that as they neared November 1998, Clark was unable to see well enough or communicate well enough to handle board meetings. Clark asserts she told the board she was about to start a new medication at the time she was placed on medical leave.

Clark filed suit in circuit court. Her complaint included a paragraph which asserted that "upon a finding of discrimination, this action should be transferred to the Chancery Court" for purposes of granting an injunction and to award "front pay." It thus appears Clark believed she was due damages in chancery in addition to those she was seeking in circuit court. Clark did not argue below that her civil trial should somehow be bifurcated. She did not move to transfer the case to chancery until after a final judgment was entered in circuit court. Clark filed her action in circuit court and then submitted her case to the jury. A verdict was returned in Clark's favor in the amount of $12,600 for lost wages and insurance benefits. She had sought back pay and lost-employment benefits, compensatory damages, and punitive damages as the affirmative relief listed in her complaint. A final judgment in Clark's case was entered by the trial court on August 3, 2000.

Clark brings her appeal arguing her postjudgment motion to transfer to chancery was denied in error. The Exchange cross-appeals asserting a lack of substantial evidence to support the jury's verdict.

## Choice of Forum

■ This case was tried in circuit court in the summer of 2000 and judgment was entered on August 3, 2000. In the judgment, paragraph E stayed execution on the judgment until a final order was issued on a motion to transfer the cause to chancery. Thus, Clark maintained the right to some sort of postjudgment assessment of damages in chancery. However, a judgment is a final determination of the rights of the parties in an action. *Shappy v. Knight,* 251 Ark. 943, 475 S.W.2d 704 (1972); *Melton v. St. Louis I. M. & S. Ry. Co.,* 99 Ark. 433, 139 S.W. 289 (1911).

■ ■ In the complaint, Clark stated that "upon a finding of discrimination" she intended to transfer the cause to chancery. Clark, however, made no attempt to transfer her cause to chancery until after she allowed the entire decision on liability and damages to be made in circuit court. She now asserts a right to some sort of postjudgment assessment of additional damages. This she may not do. Clark may not maintain an action in chancery after the action was decided in circuit court. As this court stated in *Hooper v. Ragar,* 289 Ark. 152, 711 S.W.2d 148 (1986), in such situations as this where the choice of forum has been made, the appellant has had her day in court and is not entitled to a second chance. This court in *Burns v. First Nat'l Bank,* 336 Ark. 406, 985 S.W.2d 747 (1999), cited *Moore v. Price,* 189 Ark. 117, 70 S.W.2d 563 (1934), wherein this court stated:

> Circuit courts and chancery courts are of equal dignity; and in cases where there is concurrent jurisdiction, the court that first acquires jurisdiction has the right and jurisdiction to conduct the matter to an end without interference of another court of equal dignity. *Wright v. LeCroy,* 184 Ark. 837, 44 S.W.2d 355 (1931).

Clark complains, however, that the Arkansas Civil Rights Act provides additional remedies that are undefined in the Act but which must be obtained in chancery. Although it is not clear from the briefs, we must assume that the reason the action was filed in circuit court was because the prayer for relief included punitive damages.

The Arkansas Civil Rights Act in Ark. Code Ann. § 16-123-107(c)(1)(A) (Supp. 2001) provides the court:

> [M]ay issue an order prohibiting the discriminatory practices and provide affirmative relief from the effects of the practices, and award back pay, interest on back pay, and, in the discretion of the court, the cost of litigation and a reasonable attorney's fee.

In paragraph (c)(2)(A), it provides that punitive damages are allowed to the extent of the amounts set out thereafter.

It is true that if Clark had filed this action in chancery, or if Clark had requested the matter be transferred to chancery for the chancery court to consider all the requested remedies including injunctive relief and front pay under the "clean-up doctrine," she might have been found to have waived any right to punitive damages. *Roach v. Concord Boat Corp.*, 317 Ark. 474, 880 S.W.2d 305 (1994); *Stoltz v. Franklin*, 258 Ark. 999, 531 S.W.2d 1 (1975). Equity cannot generally award punitive damages. Had this case been brought in chancery, or had it been transferred to chancery, the Exchange would have only needed to object to stop the award of punitive damages. At the same time, had there been no objection, the chancery court would not have been without authority to award damages normally awarded in circuit court. *Towell v. Shepherd*, 286 Ark. 143, 689 S.W.2d 564 (1985); *McNamara v. Bohn*, 69 Ark. App. 337, 13 S.W.3d 185 (2000).

We need not address this issue, however, because Clark made no attempt to seek relief in chancery until a final judgment was already entered in circuit court. Clark waived all equitable remedies she may have had by failing to move that the matter be transferred to chancery court. Had Clark desired the equitable remedies she now seeks, she should have moved to transfer the case to chancery court rather than let it go to the jury in circuit court. *Towell, supra.* Where there is a failure to object to jurisdiction, it will be considered consent to such jurisdiction. *Towell, supra.* As noted in the concurring opinion in *Union Nat'l Bank v. Hooper*, 295 Ark. 83, 746 S.W.2d 550 (1988), the rule is that failure to move to transfer to chancery acts as a waiver of the equitable remedies available there. This has long been the case. Even though chancery may have concurrent jurisdiction with a court of law of the subject matter at issue, a party who chooses to remain in circuit court will be held to such election. *Jamison v. May*, 13 Ark. 600 (1853). A party must suffer the consequences of the forum they choose. *Hesser v. Johns*, 288 Ark. 264, 704 S.W.2d 165 (1986).

■ The Act provides for "a civil action." Clark chose circuit court. If the courts had concurrent jurisdiction, Clark would have the right to apply to either. But, when she filed in circuit court, she selected the forum, and "a decision of that court would be binding on her — would be *res judicata.*" *Caldwell v. Fitzhugh*, 175 Ark. 801, 300 S.W. 395 (1927). One of the main purposes of the doctrine of *res judicata* is to put an end to litigation by precluding a party who has had the opportunity for one fair trial from drawing the same controversy into issue before the same or a different court. *Taggart v. Moore*, 292 Ark. 168, 729 S.W.2d 7 (1987). Clark took the case to decision in circuit court. She had her day in court and is not entitled to a second chance. *Hooper, supra.* It has long been the rule that a plaintiff who deliberately selects the forum is bound by the outcome. *Taggart, supra*; *Robertson v. Evans*, 180 Ark. 420, 21 S.W.2d 619 (1929). The judgment acted as a final adjudication on the merits. *Greene v. Pack*, 343 Ark. 97, 32 S.W.3d 482 (2000). Thus, there is no merit to Clark's postjudgment motion to transfer to chancery.

*Cross-Appeal*

■ The Exchange argues the jury verdict is not supported by substantial evidence. When a jury verdict is challenged, the court will affirm the verdict and judgment of the trial court if the verdict is supported by any substantial evidence, with the evidence and all reasonable inferences therefrom examined in the light most favorable to the appellee. *John Cheeseman Trucking, Inc. v. Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993); *Schuster's Inc. v. Whitehead*, 291 Ark. 180, 722 S.W.2d 862 (1987). Further, a jury verdict will be disturbed only when fair-minded persons could not draw the conclusion reached by the jury. *Cheeseman, supra.; Pine View Farms, Inc. v. A.O. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989).

■ The jury was presented with conflicting testimony. Clark took the stand and disputed the testimony given by the Exchange witnesses. She testified on the issue of her extension of credit that the Exchange alleged should not have been extended, and on a number of employee issues raised by the Exchange, as well on issues of accounts and use of funds. Clark denied the assertions of the Exchange witnesses, and the jury was left to decide who was telling the truth. As such, it was an issue of the credibility of a witness, which is an issue for the jury. *Sanders v. Mincey*, 317 Ark. 398, 879 S.W.2d 398 (1994); *Mays v. State*, 303 Ark. 505, 798 S.W.2d 75 (1990).

 Substantial evidence is evidence that goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Madden v. Aldrich*, 346 Ark. 405, ___ S.W.3d ___ (2001); *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001). It appears the jury believed Clark and her witnesses over those of the Exchange. This may constitute substantial evidence. Therefore, viewing this matter in the light most favorable to Clark, it appears the verdict is supported by substantial evidence, and the cross-appeal is, therefore, denied.

Affirmed.