FIRST NATIONAL BANK of DeWitt *v.*
William Claude "Bill" CRUTHIS, Jr. and Terry Cruthis,
d/b/a Cruthis Brothers

02-610                                              100 S.W.3d 703

Supreme Court of Arkansas
Opinion delivered March 13, 2003

*Russell D. Berry* and *Bradley A. Chambless*, for appellant.

*T. David Carruth*, for appellee.

R AY THORNTON, Justice. Appellant, First National Bank of DeWitt ("Bank"), appeals the trial court decision in favor of appellees, William Cruthis and Terry Cruthis, d/

b/a Cruthis Brothers, refusing to grant its motion to dismiss based on Rules 12 and 13 of the Arkansas Rules of Civil Procedure. We hold that the action was a compulsory counterclaim and must have been brought as such. Accordingly, we reverse and dismiss.

The Bank financed the Cruthises' farming operations by making loans for the production of crops. The loans were secured by the Cruthises' farm equipment and crops. In October and November of 1995, the Bank made a wheat-production loan to the Cruthises to finance that year's wheat and oat crops. The loan was also secured by the crops.

In March of 1996, the Cruthises discontinued their farming operation and informed the Bank that they had no funds to continue production of the wheat and oat crop that was growing. The Cruthises surrendered the crop to the Bank to complete the harvest. After evaluating the benefits of completing the crop, the Bank decided to complete production.

As the crop approached maturity, the market price of wheat and oats increased and the Cruthises asked the Bank to enter a booking contract in order to secure the higher price. The Bank entered the booking contract with Bunge Corporation ("Bunge") for the sale of 11,000 bushels of wheat. However, on May 21, 1996, the Cruthises told the Bank that the crop should be delivered to Stratton Seed Company ("Stratton") on booking contracts that the Cruthises had entered prior to relinquishing possession, and the Cruthises threatened action for conversion if the crop was delivered to Bunge.

The Bank hired Mike Walton to harvest the wheat. Mr. Walton cut and delivered one trailer load of wheat to Stratton, as requested by the Cruthises and over the Bank's objections. Mr. Walton abandoned his job, and the Cruthises rented machinery to complete production, delivering all the remaining crops to Stratton. The Cruthises disavowed any contract with Bunge, and the Bank terminated the contracts with Bunge. Bunge then paid $5,920.00 to the Bank, pursuant to their contract, to compensate for the drop in the price of wheat.

After the harvest was completed in August of 1996, the Cruthises delivered settlement checks from Stratton payable to the Cruthises, the Bank, and Stratton. In the settlement checks, Stratton allocated rental shares and set prices over the Bank's objection. The Bank did not negotiate these checks. The Bank then filed suit in Arkansas County Chancery Court in May, 1997, against Stratton, the Cruthises, and the Cruthises' parents on the basis of equitable theories for the recovery of property lost in the liquidation of the Cruthises' equipment and crops. In April 1998, the Cruthises and their parents brought this action based on conversion, fraud, tortious interference with a contract, breach of fiduciary duty, slander of title and defamation against the Bank in Monroe County Circuit Court. The Bank responded with a motion to dismiss due to the pendency of the action in the Arkansas County Chancery Court pursuant to Rules 12 and 13 of the Arkansas Rules of Civil Procedure, as well as a general denial asserting its security interest and its rights as a secured party. The trial court denied the motion to dismiss.

The Cruthises' causes of action for conversion, interference with a contractual relationship, and breach of fiduciary duty proceeded to trial. The trial court also ruled as a matter of law that a fiduciary relationship to the Cruthises was imposed upon the Bank. The jury was instructed upon the theories of conversion, tortious interference with a contract, and over the Bank's objection, on breach of fiduciary duty.

The jury returned a verdict of $172,850.00, and the judge entered the judgment on November 13, 2001. This appeal arises from the trial court's denial of appellant's motion to dismiss on the basis of Rules 12 and 13, the trial court's denial of appellant's motion on the sufficiency of the evidence, and the trial court's alleged error in instructing the jury on breach of fiduciary duty.

We first address the questions of whether the claims filed in Arkansas County and Monroe County arise out of the same transaction or occurrences and whether the claims are compulsory counterclaims that should have been brought in Arkansas County in response to the Bank's complaint.

■ Rule 12(b) of the Arkansas Rules of Civil Procedure states in pertinent part:

> Every defense, in law or in fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state facts upon which relief can be granted, (7) failure to join a party under Rule 19, (8) *pendency of another action between the same parties arising out the same transaction or occurrence.* A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief.

*Id.* (emphasis added). We have held that we had no choice but to dismiss the complaint where another case is pending in a different court. *Patterson v. Isom*, 338 Ark. 234, 992 S.W.2d 792 (1999). Where concurrent jurisdictions are vested in different tribunals, the first exercising jurisdiction rightfully acquires control to the exclusion of, and without the interference of, the other. *Id.*, (citing *Tortorich v. Tortorich*, 324 Ark. 128, 919 S.W.2d 213 (1996)). When a case is brought in a court of competent jurisdiction, that court's authority and control over the case continues until the matter is disposed of in the appellate court. *Id.* This rule rests upon comity and the necessity of avoiding conflict in the execution of judgments by independent courts, and is a necessary one because any other rule would unavoidably lead to perpetual collision and be productive of most calamitous results. *Id.* (citing *Moore v. Price*, 189 Ark. 117, 70 S.W.2d 563 (1934)).

Rule 13(a) of the Arkansas Rules of Civil Procedure states in pertinent part:

> A pleading *shall* state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject*

> *matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

*Id*. (emphasis added).

*Linn v. Nationsbank*, 341 Ark. 57, 14 S.W.3d 500 (2001), supports our conclusion that the claims at issue arise from the same set of circumstances, and therefore were compulsory counterclaims to the Bank's complaint filed in Arkansas County. In *Linn*, appellants had obtained a construction loan from the bank to build a bed-and-breakfast. Construction was completed, and soon after, a dispute arose. As a result, the Linns discontinued payment on the loan and the bank responded by filing a foreclosure action in the chancery court. Two months later, the Linns filed a counterclaim, requesting that it be severed and transferred to a circuit court for jury trial. Meanwhile, the Linns filed bankruptcy in the federal district court. After that, the Linns filed a motion requesting that the court dismiss their counterclaim without prejudice. A year later, the Linns filed a complaint against the bank in the circuit court that stated that it was founded on the same action nonsuited in the chancery court. It was the same claim plus new claims for breach of good faith and breach of fiduciary duty. The bank filed an answer that asserted the claims were compulsory counterclaims and were barred by *res judicata* or collateral estoppel. The trial court agreed and granted the summary judgment. *Id*.

In *Linn*, we held that there was "no question that the claims at issue here arose from the same set of circumstances—financing arrangements for a bed-and-breakfast facility." *Id*. We further held that there was a "logical relationship . . . between the foreclosure, the counterclaim, and the subsequent complaint." We held that the claims were compulsory counterclaims, and stated: "The purpose for this rule is to require parties to present all existing claims

simultaneously to the court or be forever barred, thus preventing a multiplicity of suits arising from one set of circumstances." *Id.*

In the instant case, the same "logical relationship" exists between the Bank's financing of the farming operations, secured by the growing oat and wheat crops and the subsequent complaint by the Bank and by the Cruthises. It was the booking contracts concerning those very crops that became the subject of the dual contracts for sale of bushels of wheat and oats to both Stratton and Bunge. The purpose of booking the crops was to offset the cost of repaying the Bank's financing of the farming operation that the Cruthises abandoned. The Bank filed suit, alleging its claim for recovery of lost property when the Cruthises liquidated their farming equipment and crops — the very crops that were the security for the financing. The Cruthises' complaint, alleging basically the same factual circumstances as set out in the Bank's complaint, included claims of conversion of the wheat and oat crop that was the security for the financing. The complaint alleged interference with a contractual relationship, based upon the Bank's contract to sell to Bunge the wheat that the Cruthises argued had been sold to Stratton. Finally, the Cruthises' complaint alleged breach of fiduciary duty, which stemmed from the Bank's relationship with the Cruthises concerning the financing. All of these claims are inextricably tied to the same transaction. There is a "logical relationship" between the claims and the financing and liquidation of the farming operation.

In light of *Linn, supra,* it is clear that pursuant to Rule 12(b)(8) and Rule 13(a) the claim in Monroe County arose out of the same set of circumstances as the Bank's complaint in Arkansas County, and therefore should have been dismissed because it should have been filed as a compulsory counterclaim to the Bank's complaint in Arkansas County. Because we hold that the claims should have been dismissed by the trial court, we decline to reach the issues that arose during the trial in Monroe County, such as the trial court's denial of appellant's motion on the sufficiency of the evidence and the trial court's alleged error in instructing the jury on breach of fiduciary duty.

We reverse and dismiss.