FIRST NATIONAL BANK of DeWitt *v.*
Claude CRUTHIS, Catherine Cruthis, Bill Cruthis, Terry Cruthis,
Cruthis Brothers, Riceland Seed Company and Stratton Seed

04–448                                                    203 S.W.3d 88

Supreme Court of Arkansas
Opinion delivered February 10, 2005

[Rehearing denied March 10, 2005.]

*Berry Law Firm*, by: *Russell D. Berry, Bradley A. Chambless*, and *M. Elizabeth Skinner*, for appellant.

*Malcolm R. Smith, P.A.*, for appellees.

JIM HANNAH, Chief Justice. The First National Bank of DeWitt (FNB) appeals a judgment on a jury verdict and

alleges that the circuit court erred in submitting an equitable issue for decision by the jury, in denying motions for judgment notwithstanding the verdict and new trial, and in failing to modify the jury verdict to conform to the jury's intent. We hold that the circuit court erred in submitting to the jury the equitable issues contained in Count I of FNB's Amended Complaint. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (b)(1).

*Facts*

This case involves money lent by FNB to Claude Cruthis, Catherine Cruthis, Bill Cruthis, Terry Cruthis, individually, and as partners of Cruthis Brothers, a partnership (Cruthis). The loans were used to fund farming operations. FNB lent Cruthis a total of $148,500 through six loans extended between 1993 and 1996. The loans were variously secured by personal and real property. In 1996, when Cruthis's wheat and oat crop were planted and growing, Cruthis told the FNB that due to a lack of funds, operations would cease. Cruthis sold some but not all property in which FNB held a security interest and forwarded the proceeds to FNB. This did not satisfy the total loan obligation. FNB decided to protect its exposure on the outstanding loans by finishing Cruthis's wheat and oat crops, which required an investment of more than $14,000. Wheat prices were rising during this time, and Cruthis approached FNB and asked that a portion of the future crop be committed to Bunge Corporation to obtain the higher price then available. FNB obligated itself to Bunge to acquire a higher price than might exist when the crop was actually harvested. However, Cruthis had previously obligated some portion of the crop to Riceland Seed Company d.b.a. Stratton Seed Company (Stratton). Cruthis alleges that only a small portion of the crop was promised to Stratton, and that there was more than sufficient grain to meet both the obligation to Stratton, as well as make an offer to Bunge. When it came time to harvest, Cruthis stopped FNB from harvesting the grain and delivering it to Bunge, threatened prosecution for criminal trespass, rented equipment, harvested the grain, and delivered it to Stratton. Stratton sold the grain and received funds in the amount of $50,618; Stratton issued checks for the $50,618 and delivered the checks to FNB, however, the checks were not cashed, were never negotiated and Stratton retains the $50,618 today. In 1998, Cruthis brought an action in Monroe County against FNB in conversion, interference with contract, and breach of fiduciary duty. The Monroe County case resulted in a dismissal of Cruthis's complaint because it should have been brought as a

compulsory counterclaim in the case before us, an already existing action filed in chancery court in Arkansas County on May 30, 1997. *See First National Bank of Dewitt v. Cruthis*, 352 Ark. 292, 100 S.W.3d 703 (2003). In the present action, by way of its Amended Complaint filed August 8, 2003, FNB sought restitution including an equitable lien, damages for breach of contract, damages for conversion, and damages for breach of warranty.

After dismissal of the action in the appeal noted above, Cruthis filed a counterclaim in the present action asserting causes of action for conversion, fraud and misrepresentation, tortious interference with contract, undue control and breach of fiduciary capacity. A jury demand was included in the counterclaim. Cruthis filed a motion to dismiss FNB's action in chancery for failure to assert that there was no adequate remedy at law. By the time the court heard the matter, Amendment 80 had taken effect, and the chancery court had become a circuit court. The circuit court stated that there was merit to the claim that FNB failed to assert a lack of an adequate remedy at law and concluded that there was an adequate remedy at law. However, rather than dismiss the case, the circuit court stated that the case would be decided at law rather than at equity.

Following a jury verdict, FNB filed a motion for judgment not withstanding the verdict, or in the alternative, for a new trial. FNB alleged that there was a lack of substantial evidence supporting the jury verdict. More specifically, FNB argued that there was a lack of substantial evidence supporting the jury's verdict that Stratton was not unjustly enriched. Alternatively, FNB argued for a new trial based on an error in the jury's assessment "due to an erroneous conclusion as to the effect of their verdict form."

### Amendment 80

This case involves a question of whether the circuit court erred in trying the case as one at law rather than at equity. This implicates Amendment 80 to the Arkansas Constitution and its effect on jurisdiction formerly residing in circuit and chancery courts. Amendment 80 is now part of our constitution. In interpreting the constitution on appeal, our task is to read the law as it is written and interpret it in accordance with established principles of constitutional construction. *Smith v. Sidney Moncrief Pontiac, Buick, GMC, Co.*, 353 Ark. 701, 120 S.W.3d 525 (2003); *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002). It is this court's responsibility to decide what a constitutional provision means, and

*we will review a lower court's construction de novo. Id.* We are not bound by the decision of the circuit court; however, in the absence of a showing that the circuit court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.* Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Smith, supra; Worth v. City of Rogers,* 341 Ark. 12, 14 S.W.3d 471 (2000); *Daniel v. Jones,* 332 Ark. 489, 966 S.W.2d 226 (1998). Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.*

As we previously stated:

> The passage of Amendment 80 on November 7, 2000 was a watershed event in the history of the Judicial Department of this state. Jurisdictional lines that previously forced cases to be divided artificially and litigated separately in different courts have been eliminated. This fundamental change naturally brings with it a whole host of issues, both theoretical and practical, concerning the form and structure of our court system.

*In Re Implem. of Amend. 80,* 345 Ark. Appx. 664, 47 S.W.3d 262 (2001). Amendment 80 to the Arkansas Constitution merged the chancery and circuit courts. *Summit Mall Co. v. Lemond,* 355 Ark. 190, 211, 132 S.W.3d 725 (2003); *United Food & Com. Workers, Int. Union v. Wal-Mart,* 353 Ark. 902, 120 S.W.3d 89 (2003). Section 6(A) of Amendment 80 to the Arkansas Constitution provides "Circuit Courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution." As a consequence of Amendment 80, courts that were formerly chancery and circuit courts are now referred to as circuit courts. *Id.* Because Amendment 80 states that circuit courts assume the jurisdiction of chancery courts, circuit courts simply have added to their already existing jurisdiction as a court of law the equitable jurisdiction which chancery courts held prior to adoption of the Amendment. *Ark. Prof'l Bail Bondsman Licensing Bd. v. Frawley,* 350 Ark. 444, 453, 88 S.W.3d 418 (2002). In other words, no new or expanded jurisdiction beyond that formerly existing in the chancery and circuit courts was created through Amendment 80. Rather, circuit court jurisdiction now includes all matters previously cognizable by circuit, chancery, probate, and juvenile court. *See* Amendment 80, § 19(B)(1); Administrative Order No. 14, §§ 1(a) and (b), 344 Ark. Appx. 747- 48 (2001). *See also Moore v. Sipes,* 85 Ark. App. 15, 106 S.W.3d 903 (2004).

Prior to adoption of Amendment 80, a choice had to be made by a plaintiff of whether it was best to file suit in chancery or circuit court. The clean-up doctrine was used to allow a chancery court to decide law issues because under that longstanding rule, once a chancery court acquired jurisdiction for one purpose, it could decide all other issues. *Douthitt v. Douthitt*, 326 Ark. 372, 930 S.W.2d 371 (1996). The doctrine reached the point in recent years that unless the chancery court had no tenable nexus to the claim, this court would consider the matter of whether the claim should have been heard in chancery to be one of propriety rather then one of subject-matter jurisdiction. *Douhitt, supra; Liles v. Liles,* 289 Ark. 159, 711 S.W.2d 447 (1986). Further, it was possible to sever claims at law to be tried in circuit court. *Tyson v. Roberts,* 287 Ark. 409, 700 S.W.2d 50 (1985); *see also Spitzer v. Barnhill,* 237 Ark. 525, 374 S.W.2d 811 (1964).

■ There is no longer a need to elect in which court to file a lawsuit. *See Clark v. Farmers Exchange, Inc.,* 347 Ark. 81, 89, 61 S.W.3d 140 (2001). However, as already discussed, Amendment 80 did not alter the jurisdiction of law and equity. It only consolidated jurisdiction in the circuit courts. Therefore, matters that could be submitted to a jury for decision and the matters that must be decided by the court remain unaltered.

■ The circuit court submitted this case to the jury, although FNB sought restitution and an equitable lien in Count I. FNB did not request a jury and argues on appeal that submission of restitution to the jury was error. Cruthis requested a jury in their counterclaim. Cruthis argues that it was not error to submit the case to the jury. The right to a jury trial set out in the Arkansas Constitution in Art. 2, Sec. 7 was unaffected by Amendment 80. All five Arkansas Constitutions have provided that the right to a jury trial "shall remain inviolate." The 1868 and 1874 constitutions include the additional language that the right to a jury trial extends to "all cases at law." This court has clearly stated that Art. 2, Sec. 7 does not assure the right to a jury trial in all possible instances, but rather in those cases where the right to a jury trial existed "when our constitution was framed." *Jones v. Reed,* 267 Ark. 237, 248, 590 S.W.2d 6 (1979). *See also McClanahan v. Gibson,* 296 Ark. 304, 756 S.W.2d 889 (1988); *Dunn v. Davis,* 291 Ark. 492, 725 S.W.2d 853 (1987); *Colclasure v. Kansas City Life Ins. Co.,* 290 Ark. 585, 720 S.W.2d 916 (1986); *St. Louis I.M. & S. Ry. Co. v. Hays,* 128 Ark. 471, 195 S.W. 28 (1917); *Wheat v. Smith,* 50 Ark.

266, 7 S.W. 161 (1888); *Neel v. State*, 9 Ark. 259 (1845). Further, the right to a jury trial "does not apply to new rights created by the legislature since the adoption of the constitution." *Henry v. Goodman*, 294 Ark. 25, 741 S.W.2d 233 (1987) (*rev'd on other grounds by Act 293 of 1989*). *See also Lockley v. Easley*, 302 Ark. 13, 786 S.W.2d 573 (1990). As this court stated in *State v. Johnson*, 26 Ark. 281, 289 (1870), "It has truly been said that a 'Constitution is not the beginning of government,' and that it is adopted with a knowledge that it is, and was made in harmony and consonance with the condition of the things existing at the time of its adoption."

Because Amendment 80 left the right to a jury trial unaltered, the question presented is whether prior to adoption of Amendment 80, Count I could be properly submitted to a jury for decision. FNB argues that because restitution was sought in Count I, it was an equitable action that had to be tried to the court.

Restitution is founded upon the doctrine of unjust enrichment. *Coley v. Green*, 232 Ark. 289, 335 S.W.2d 720 (1960). Unjust enrichment is an equitable doctrine. *Brookfield v. Rock Island Improvement Co.*, 205 Ark. 573, 169 S.W.2d 662 (1943). However, even though the doctrine is equitable, the issue of unjust enrichment has been submitted to the jury in circuit court where the assertion is wrongful retention of money because the cause of action "is one corresponding with the common law action of assumpsit for money had and received." *Arkansas Natl Bank v. Martin*, 110 Ark. 578, 584, 163 S.W. 795 (1914). *See also Hutchinson v. Phillips*, 11 Ark. 270 (1850). "The action for assumpsit is one for the recovery of damages for the nonperformance of a simple contract. Such a contract may be express or implied, and the action is based on the breach thereof, and is therefore *ex contractu*." *Bertig v. Norman*, 101 Ark. 75, 80, 141 S.W. 201 (1911). "In both the civil and common law, rights and causes of action are divided into two classes — those arising *ex contractu* (from a contract), and those arising *ex delicto* (from a delict or tort)." *Helton v. Sisters of Mercy of St. Joseph's Hospital*, 234 Ark. 76, 85, 351 S.W.2d 129 (1961); quoting *Black's Law Dictionary* 660 4th ed. (1951) (citing 3 *Blackstone's Commentary* 117). The use of courts of law in such actions is illustrated by a discussion in *Import Motors v. Luker*, 268 Ark. 1045, 599 S.W.2d 398 (1980), where this court stated:

> The right to recover the $5,000.00 is on the basis of the common law action of assumpsit. Assumpsit has its origin in relief

anciently afforded by chancery in respect to an implied obligation arising by operation of law, and is grounded in equitable principle. In *Hartford Accident & Indemnity Co. v. Benevento*, 133 N.J.L. 315, 44 A. 2d 97 (1945), the court said the action of assumpsit has been extended:

> To almost every case where an obligation arises from natural reasons, and the just construction of law, that is *quasi ex contractu* . . . It lies only for money, which *ex aequo et bono*, the defendant ought to refund . . . This action is greatly favored by the courts. It is less restricted and fettered by technical rules and formalities than any other form of action. . . . It approaches nearer to a bill in equity than any other common law action.

This concept is supported by *United States v. Jefferson Elec. Mfg. Co.*, 291 U.S. 386, 54 S.Ct. 443; *Holcomb v. Kentucky Union Co.*, 262 Ky. 192, 90 S.W.2d 25; *Beauregard v. Orleans Trust Co.*, 108 Vt. 42, 182 A. 182; and *Allen v. Mendelsohn & Co.*, 207 Ala. 537, 93 So. 416. In the latter case the court said:

> Assumpsit is an action of an equitable character, liberal in form, and greatly favored by the court as a remedy . . . no agreement is necessary; assumpsit will lie wherever the circumstances are such that the law, *ex debito justitiae* will imply a promise.

. . .

> While an action of assumpsit, although based on equitable principles is an action at law, the law is well settled that when the chancery court has jurisdiction of a case for one purpose, it will retain jurisdiction to settle the rights of the parties arising out of the subject matter, *Austin v. Dermott Canning Co.*, 182 Ark. 1128, 34 S.W.2d 773 (1931); *Spears v. Rich*, 241 Ark. 15, 405 S.W.2d 929 (1966). Unquestionably, this action for injunctive and other relief was one cognizable in equity, and therefore, the court has jurisdiction to do complete justice as between the parties.

*Import Motors*, 268 Ark. 1052-53. In *Fite v. Fite*, 233 Ark. 469, 345 S.W.2d 362 (1961), this court stated:

> The decisive questions for decision are whether the trial court erred in submitting the issues to the jury on the principle of unjust enrichment, and whether the facts in this case sustain an application of that principle.

. . .

> We find that the principle of unjust enrichment is more frequently applied in courts of Chancery, but as heretofore noted, it is also recognized in courts of law. It has been approved by this court as applied to a law court in the case of *Arkansas National Bank v. Martin,* 110 Ark. 578, 163 S.W. 795. This case was tried in Circuit Court of Garland County on dissimilar facts but involving the principle of unjust enrichment.

*Fite,* 233 Ark. at 472-73.

Thus, although unjust enrichment is an equitable cause of action, because it is based on the alleged breach of an implied contract, it may be heard in circuit court and may be heard by a jury. *See, e.g., Fite, supra.* However, we must reverse because restitution was not the only equitable remedy sought in Count I. FNB also sought an equitable lien on certain property. An equitable lien is a right to have a demand satisfied from a particular fund or specific property. *Kane Enter. v. MacGregor, Inc.,* 322 F.3d 371 (5th Cir. 2003) (quoting *Blacks Law Dictionary* 934 7th ed. (1999)). An equitable lien has also been defined as a remedy that awards a nonpossessory interest in property to a party who has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled. *J. Lorimer v. Berrelez,* 331 F. Supp.2d 585 (E.D. Mich. 2004) (quoting *Senters v. Ottawa Sav. Bank,* 443 Mich. 45, 503 N.W.2d 894 (1993). An action on an equitable lien was historically heard in chancery court because it is an equitable remedy. *See Dews v. Halliburton Indus. Inc.,* 288 Ark. 532, 708 S.W.2d 67 (1986); *Rose City Bottling Works v. Godchaux Sugars, Inc.,* 151 Ark. 269, 256 S.W. 825 (1922). Because an equitable lien was sought, the circuit court erred in submitting Count I to the jury, and because we reverse on this basis, we need not address the remaining issues.

Reversed and remanded.