Mark L. DAVIS *v.* Howard L. HOLT

90-317                                                   804 S.W.2d 362

Supreme Court of Arkansas
Opinion delivered February 25, 1991.

*Laser Sharp Mayes Wilson Bufford & Watts*, by: *Dan F. Bufford*, for appellant.

*John Dodge*, for appellee.

DAVID NEWBERN, Justice. This is an appeal from an election contest decision. The appellant, Mark L. Davis, defeated the appellee, Howard L. Holt, in an election for a seat on the Gentry School District No. 19 Board. The Circuit Court held that Davis was not a resident of the District at the time of his election, was not a qualified elector of the District, and thus was not eligible. The Court declared the position vacant. Davis appeals from the decision, contending that he was a resident and qualified elector of the District. Holt cross-appeals, contending that the Court should have placed him in office as the winner of the election rather than declaring the position vacant. We agree with the Circuit Court's decision that Davis was ineligible for the position because he was not a resident of Gentry District. We also agree that the position was therefore vacant.

The essential facts are not disputed.

In 1982, Davis received from members of his family a conveyance in fee of a 40-acre tract plus an easement over a .23 acre tract connecting the 40-acre tract with a county road. He had been living in Gentry where his children attended school. Davis spoke with the Gentry School Superintendent who assured him his residence would remain in the Gentry School District if he moved onto the 40-acre tract. The move took place. Davis's children continued attending the Gentry schools, and he continued to vote in Gentry School District elections.

Davis's 1984 voter registration listed his residency as being

in the Gentry District. He was elected that year to the Gentry School Board. In 1986, a question arose whether he was a resident of the District, and Davis resigned from the Board. In 1988, Davis concluded that the 40-acre tract he owned outright, and on which his dwelling was located, was not in the Gentry School District but that the .23-acre easement was in the Gentry School District. Davis's father, on April 30, 1989, conveyed to Davis the .23 acres in fee, thus creating a 40.23-acre tract lying in both the Decatur School District and the Gentry School District.

In 1987, this Court decided, in *Cummings* v. *Washington County Election Comm.*, 291 Ark. 354, 724 S.W.2d 486 (1987), that one whose property included land in two school districts could hold office only in the district in which he or she resided, despite the law permitting such a candidate's children to attend school in either of the two districts, "regardless of the location of the home." Ark. Code Ann. § 6-18-203 (Supp. 1989).

In 1989, the Arkansas General Assembly passed Act 242 which became effective July 3, 1989. The Act, codified as Ark. Code Ann. § 6-13-616 (Supp. 1989), contains this language:

> (a)   Except as provided in subsection (b) of this section, no person shall be eligible to be a member of any school district board of directors in this state unless he is a bona fide resident and qualified elector of the school district which he serves.
> (b)(1)   A person whose residential property contains portions of two (2) school districts shall be eligible to be a member of either of the school district's board of directors provided he is a qualified elector of the county in which the school district for which he seeks the position lies and he has or formerly had children enrolled in that school district.
> (2)   For purposes of this subsection, "residential property" means that parcel of land which contains the dwelling in which the person resides not less than nine (9) months out of each year.

The election contested here, in which Davis and Holt were the only candidates, was held on September 19, 1989. On September 29, 1989, the Benton County Clerk, acting on her own initiative, changed the residency listing on Davis's voter registra-

tion from "Gentry" to "Decatur."

The trial Court held that Davis's residence was in the Decatur School District, "and that did not change when he purchased the .23 acres." It was also held that Act 242 violates Ark. Const. art. 19, §§ 3. and 4., to the extent the Act permits election to a district office of a qualified elector of the *county*, as opposed to a qualified elector of the *district* to be served by the elected official.

Article 19, § 3., of the Constitution provides: "No persons shall be elected to . . . fill a vacancy in any office who does not possess the qualifications of an elector." Section 4. provides: "All . . . district, county and township officers [shall reside] within their respective districts, counties, and townships . . . ."

### 1. The elector requirements

Article 19, § 3., of the Constitution requires nothing more than that the elected person be an "elector." In *Thomas* v. *Sitton*, 213 Ark. 816, 212 S.W.2d 710 (1948), a question was raised whether Sitton should be paid his salary as City Marshal of the City of Clinton. His mandamus action was defended on the basis that Sitton was not a resident of the City of Clinton and thus he was not entitled to the office. After discussing statutes bearing on the question whether a city marshal was a public "officer" rather than an employee, this Court wrote:

> It must necessarily follow, therefore, that a marshal of a city of the second class and a town marshal of incorporated towns are officers under the meaning of Art. 19, § 3 of our Constitution. That section provides: "No person shall be elected to or appointed to fill a vacancy in any office who does not possess the qualifications of an elector."
>
> Appellee, Sitton, having never resided in the City of Clinton, was not eligible to hold the office of city marshal.

*See also Charisse* v. *Eldred*, 252 Ark. 101, 477 S.W.2d 480 (1972).

In addition, Ark. Code Ann. § 6-14-108 (Supp. 1989) provides: "All persons who have registered to vote in the manner prescribed by . . . Amendment 51 . . . shall be deemed qualified electors of the school district in which they reside."

■ We agree with the trial Court that even though Act 242 purported to make a person whose residential property spans parts of two school districts eligible to serve on the board of either, it did not change the qualified elector requirement of Art. 19, § 3., which we have interpreted to require residence in the political subdivision to be served by the elected official. Nor could it alter the more straightforward residency requirement of Art. 19, § 4. So the question simply becomes one of residency. Does Davis reside in the Gentry School District or not?

■ In the *Cummings* case, our decision was based on the fact that the candidate's home was in a district other than the one where she sought election, but she did not contend she had a physical residence in the District. Davis contends that because the parcel of land containing his residence is in both districts and because he has always intended to reside in the Gentry District that is his residence. He freely admits, however, that his house is located in the Decatur District and that taxes on all his property but the added .23-acre tract go to the Decatur District. Based on these facts, the trial Court concluded that Davis does not reside in the Gentry District, and the addition of the .23 acre tract to his 40 acres did not affect his residency.

■ Intent is relevant to the question of domicile when a party has more than one residence or has departed from a residence for a temporary stay elsewhere with the intent of returning, *see Charisse v. Eldred, supra,* but it has far less to do with the concept of residency. While there is no doubt that the concept of residency differs from that of domicile, *Stephens v. AAA Lumber Co.,* 238 Ark. 842, 384 S.W.2d 943 (1964), the definition of "residence" is not easy. An excellent discussion of the term appears in *Krone v. Cooper,* 43 Ark. 547 (1884). Chief Justice Cockrill, writing for the Court, was faced with the task of determining whether a defendant in an attachment proceeding was a "resident" of Arkansas at the time the writ was sued out. The opinion lamented that the term may have different meanings in different contexts. It was concluded that for purposes of the attachment laws it meant

an established abode, fixed permanently for a time for business or other purpose, although there may be an intent existing all the while to return . . . at some time or other to

the true domicile; but so difficult is it found to provide a definition to meet all the varying phases of circumstance that the determination of this question may present, that the courts say, that, subject to the general rule, each case must be decided on its own state of facts.

In view of our prior decisions on the matter of residency in the context of elections, particularly our apparent interpretation of Ark. Const. art. 19, § 3., in *Thomas* v. *Sitton, supra*, we cannot disagree with the conclusion the trial Court must necessarily have reached that, in the context of this school election case, the term "residence" is used by the Constitution and statutes to mean the place where Davis's house was physically located.

This pronouncement is complicated somewhat by Ark. Code Ann. § 14-14-1306 (1987) which provides:

> (a) All county, county quorum court district, and township officers shall reside within their respective townships, districts, and counties.
>
> . . .
>
> (c) For purposes of this section, legal residence shall be defined as the *domicile* of the officer evidenced by the *intent* to make such *residence* a fixed and permanent home [emphasis added].

A school district, for election purposes is the same as a township. Ark. Code Ann. § 6-14-107(a) (1987).

Like Act 242, § 14-14-1306 does not alter Art. 19, § 3., as interpreted by this Court. Even if the language of § 14-14-1306(c) were thought to be a controlling definition of "residence," with greater emphasis upon intent, we would consider the highly ambiguous statement in the light of our decision in *Brick* v. *Simonetti*, 279 Ark. 446, 652 S.W.2d 23 (1983). There we concluded it was the actions of an elected official in moving physically to an apartment in the quorum court district she was elected to serve which made her a resident of the district.

We therefore affirm the decision on appeal.

## 2. Authority to declare a vacancy

Holt argues that a court, in an election contest has no authority to declare the position vacant, but having determined the winning candidate ineligible to hold the office, it must declare the candidate obtaining the next highest number of votes the winner.

We have addressed this question previously. In *Swepston* v. *Barton*, 39 Ark. 549 (1882), Barton, who had been Swepston's opponent, challenged the election of Swepston as Sheriff of Crittenden County. Barton alleged numerous violations with respect to the conduct of the election. After filing the action Barton amended his complaint to allege that Swepston was ineligible to hold the office, and thus he, Barton, should be declared the winner. Our decision was that the other election errors alleged by Barton were not of the sort to be considered in a collateral attack. We did not decide whether Swepston was ineligible because there had been no ruling on the point in the Circuit Court. We did, however, discuss it:

> As to the legal effect of votes case for an ineligible candidate, two views have been entertained. The English doctrine is, that if the disqualification of a candidate is notorious, votes cast for him will be deemed to have been purposely thrown away, and the candidate having the next highest number of votes will be elected.
>
> . . .
>
> But the weight of American authority is, that when a vote for an ineligible candidate is not declared void by statute, the votes he receives, if they are a majority or plurality, will be effectual to prevent the opposing candidate being chosen, and the election must be considered as having failed.
>
> . . .
>
> The real issue in this cause was, which candidate received a majority of the legal votes cast. If Barton did not obtain such a majority, but his competitor was ineligible, it by no means follows that he, as the next in the poll, should

receive the office. "The votes are not less legal votes because given to a person in whose behalf they can not be counted." *Saunders* v. *Haynes*, 13 Cal. 145.

According to the annotation, *Elections — Dead or Disqualified Candidate*, 133 A.L.R. 319 (1941), we were, and continued to be, correct in our statement of the weight of American authority on the point. We followed the *Swepston* case with holdings to that effect, and have consistently followed it in, *e.g., Horne* v. *Fish*, 198 Ark. 79, 127 S.W.2d 623 (1939), and *Bohlinger* v. *Christian*, 189 Ark. 839, 75 S.W.2d 230 (1934).

We therefore find no impropriety in the trial Court's conclusion that the school board position in question had not been filled.

Affirmed on appeal and affirmed on cross-appeal.

GLAZE, J., not participating.