The Honorable Joe Molinaro State Representative 204 Amber Oaks Drive Sherwood, Arkansas 72120
Dear Representative Molinaro:
This letter is a response to your request for an opinion regarding several issues related to city councils. On behalf of Amy G. Partain, Editor of the Sherwood Voice, you have presented several questions, which have been restated as follows:
 (1) Is it legal for a city council to suspend its meetings, rather than officially adjourning, so that the council is technically always in session, thus allowing the members to confer about city business without the Freedom of Information Act's requirements of notification or presence of the public or the press?
 (2) If a city council adjourns a meeting only to reconvene moments later, would the reconvened meeting be governed by the Freedom of Information Act?
 (3) Do members of city boards, such as the public facilities board, city commissions, and city committees, have to be residents of that city in order to be members of those boards?
RESPONSE
Question 1 — Is it legal for a city council to suspend its meetingsrather than officially adjourning, so that the council is technicallyalways in session, thus allowing the members to confer about citybusiness without the Freedom of Information Act's requirements ofnotification or presence of the public or the press?
A city council may not take any action that is calculated to avoid the requirements of the Freedom of Information Act ("FOIA") (codified at A.C.A. § 25-19-101 et seq.).
This office has repeatedly opined that public meetings may not be scheduled in such a way as to defeat FOIA requirements. See, e.g., Att'y Gen. Op. Nos. 93-299 and 92-162. Our opinions have been based upon the Arkansas Supreme Court's holdings that the FOIA must be liberally construed, so that its stated purpose of assuring that public business is conducted in the open may be achieved. See, e.g., Arkansas Gazette v.Pickens, 258 Ark. 69, 522 S.W.2d 350 (1975); Laman v. McCord,245 Ark. 401, 432 S.W.2d 753 (1968).
I therefore must conclude that a city council may not suspend its meeting rather than adjourning (assuming that it has the power to do so) for the sole purpose of avoiding the requirements of FOIA.
There is some question as to whether a city council (or any other body) can validly take the action that you have described. That is, it is unclear as to whether an action "suspending" a meeting for the purpose of continuing it at another time, rather than adjourning the meeting, would be valid. See Robert's Rules of Order, § 8. Nevertheless, if we assume that a city council can validly take such action, and that the originally-called meeting did, in fact, continue in later phases, it is my opinion that the notice requirements of the Freedom of Information Act will apply to the subsequent phases of the originally called meeting, so as to require notice of the change in time and location.[1]
The notice requirement of the Freedom of Information Act for regular meetings states:
 (b)(1) The time and place of each regular meeting shall be furnished to anyone who requests the information.
A.C.A. § 25-19-106(b)(1) (emphasis added).
The notice that was given for the originally called regular meeting will not suffice as notice to the public of subsequent phases of that meeting, because the information given in that original notice will no longer be correct and valid. In order to be in compliance with the Freedom of Information Act, notice of the new time and location must, in my opinion, be given. Otherwise, the public could validly claim that the originally-given notice was incorrect, and that they were not notified of the actual time and location of the meeting.
This office has taken the position that the process of conducting public business, for purposes of the Freedom of Information Act, does not consist merely of any one particular phase of the process,
 . . . but rather is a spectrum including all phases of the process by which an end result is achieved, including deliberations, discussion, and information gathering. Accordingly, the Freedom of Information Act gives the public the right to observe the entire spectrum, not just selected parts.
Attorney General Opinion No. 80-016. I continue to hold this position.
For these reasons, I conclude that all subsequent phases of a suspended (but not adjourned) regular meeting of a city council must comply with the notice requirements of the Freedom of Information Act.[2]
Question 2 — If a city council adjourns a meeting only to reconvenemoments later, would the reconvened meeting be governed by the Freedom ofInformation Act?
It is my opinion that if a city council adjourns a meeting, and reconvenes moments later, the reconvened meeting would constitute a "special meeting," and would be governed by the Freedom of Information Act.
I have previously opined that a meeting that is "reconvened" after having been adjourned constitutes a "special meeting" within the meaning of the Freedom of Information Act, and is therefore governed by the notice requirements of the act that are applicable to special meetings. See
Att'y Gen. Op. Nos. 93-308 and 93-299. The applicable notice requirements are set forth in A.C.A. § 25-19-106(b)(2), which states:
 (2) In the event of emergency or special meetings, the person calling the meeting shall notify the representatives of the newspapers, radio stations, and television stations, if any, located in the county in which the meeting is to be held, and any news media located elsewhere which cover regular meetings of the governing body, and which have requested to be so notified of emergency or special meetings, of the time, place, and date of the meeting. Notification shall be made at least two (2) hours before the meeting takes place in order that the public shall have representatives at the meeting.
A.C.A. § 25-19-106(b)(2).
I therefore conclude that if a city council adjourns its regular meeting, it must give at least two hours' notice of the reconvened meeting.
Question 3 — Do members of city boards, such as the public facilitiesboard, city commissions, and city committees, have to be residents ofthat city in order to be members of those boards?
Although state law explicitly requires those who serve on a city's governing body to be residents of the city governed by that body (see,e.g., A.C.A. §§ 14-43-303, -308, -309; 14-44-103; 14-45-103; 14-47-109), it sets forth no general requirements regarding the qualifications for membership on city sub-boards, commissions, and committees. Some sub-boards, commissions, and committees are created or authorized by state laws that specify residency as a requirement for membership. See,e.g., A.C.A. § 14-50-201 (civil service commission); A.C.A. § 14-201-105
(municipal waterworks and electricity board); A.C.A. § 14-201-312
(municipal public utilities board). Therefore, if the sub-board, commission, or committee in question was created or authorized by state law, reference must be made to the statute by which the body was created or authorized in order to determine whether residency is a requirement for membership on that body.
If membership on the sub-board, commission, or committee in question constitutes an "office," the members must be qualified electors, pursuant to the requirements of Article 19, § 3 of the Arkansas Constitution. The Arkansas Supreme Court has interpreted the requirement of "qualification as an elector" to mean residence in the political subdivision in question. See Davis v. Holt, 304 Ark. 619, 804 S.W.2d 362 (1991);Charisse v. Eldred, 252 Ark. 101, 477 S.W.2d 480 (1972); Thomas v.Sitton, 213 Ark. 816, 212 S.W.2d 710 (1948); Att'y Gen. Op. No. 92-045. The members must, therefore, be residents of the city if membership on the body in question constitutes an "office."
The Arkansas Supreme Court has described an "office" as a position in which the holder of the position exercises some part of the State's sovereign power, and in which the tenure, compensation, and duties are usually fixed by law. An "office" is also indicated by the taking of an oath of office, the receipt of a formal commission, and the giving of a bond. By contrast, in a position that is not an "office," some or all of these characteristics are lacking. Maddox v. State, 220 Ark. 762,249 S.W.2d 972 (1952). A determination of whether membership on any particular body constitutes an "office" would require an evaluation of the specific facts attendant to that particular body.
If membership on the municipal sub-board, commission, or committee in question was not created or authorized by a state law that specifies residency as a qualification for membership, and if membership on the body does not constitute an "office," the qualifications for membership will be determined by the provisions of the ordinance that created the body, if such an ordinance exists. See Att'y Gen. Op. No. 92-045. If the ordinance is silent on the question of the residency of the members, or if no such ordinance exists, I must conclude that it is permissible for a non-resident to serve on the sub-board, commission, or committee in question, inasmuch as state law does not prohibit such a result. Id.
In sum, therefore, it is my opinion that the answer to Question 3 will depend first upon whether the sub-board, commission, or committee in question was created or authorized by a state law. If so, reference must be made to the statute by which the body was created or authorized in order to determine whether that statute specifies residency as a required qualification for membership on the body. Second, it will depend upon whether membership on that body constitutes an "office." If membership on the body constitutes an "office," residency in the political subdivision is required. Third, if the body was not created or authorized by a state law that specifies residency as a requirement for membership, and if membership on the body does not constitute an "office," the answer to Question 3 will depend upon the language of the ordinance by which the body was created, if such an ordinance exists. If the ordinance creating the body is silent, or if no such ordinance exists, non-residency is permissible.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Question 1 appears to envision a factual setting in which later phases of the "suspended" meeting would take place on subsequent days, rather than immediately. My response to Question 1 is based upon the presumption that this is the scenario about which you have inquired. However, I recognize that there may be instances in which a meeting can be validly "suspended" and in which new notice under FOIA would not be required. This opinion does not address such situations. It should be noted that not all subsequent communications among members regarding city business will constitute "meetings" within the meaning of FOIA. Such communications will constitute "meetings" for purposes of the act, even if they involve less than a quorum of the council, if they are called for the purpose of discussing any matter upon which foreseeable action will be taken by the governing body. See Mayor and City Council of El Doradov. El Dorado Broadcasting Co., 260 Ark. 821, 544 S.W.2d 206 (1976). Communications that do not constitute "meetings" are not subject to the requirements of FOIA.
[2] See the qualification set forth in footnote 1.