The Honorable Wayne Wagner State Representative P.O. Box 909 Manila, AR 72442-0909
Dear Representative Wagner:
This is in response to your request for an opinion as to whether a school board member elected from a single-member zone is eligible to retain his position when he no longer resides in that zone but still lives within the school district's boundaries. You state that the district in question is Riverview in White County, which was formed in 1991 after voters approved consolidating several smaller districts and electing board members of the resulting district from single-member zones.
While the answer to this question is not entirely clear from a review of the relevant Arkansas Code provisions, it appears that the school board member may remain on the board as long as he still resides within the district.
Although the members of the board of directors of the resulting district are elected from single-member zones (see A.C.A. § 6-13-1205(c) (Repl. 1993)), my research has yielded no clear authority for the proposition that a board member ceases to be qualified if he removes his residence outside the zone from which he was elected.[1] It is clear, however, that the position may be declared vacant if the board member "remove[s] his actual, bona fide residence outside the district boundaries, on other than a temporary basis. . . ." A.C.A. § 6-13-613(f) (Repl. 1993) (emphasis added). See generally Ops. Att'y Gen. 95-222 and 95-222A. But there is no statute comparable to the one, for example, prescribing a vacancy in the event a city alderman ceases to reside in the ward from which he was elected. See, e.g., A.C.A. § 14-43-310 (1987).
It should perhaps be noted that I have considered the possible argument that Article 19, sections 3 and 4 to the Arkansas Constitution require residence in the zone, apart from any statutory provisions. The Arkansas Supreme Court has interpreted art. 19, § 3 (the so-called "qualified elector" requirement) to require residence "in the political subdivision to be served by the elected official." Davis v. Holt, 304 Ark. 619, 623,804 S.W.2d 362 (1991).[2] The court in Davis also noted "the more straightforward residency requirement . . ." (id.) of art. 19, § 4, which requires residence within the respective officers' "districts, counties, and townships."
The court in Davis clearly viewed art. 19, §§ 3 and 4 as requiring residence within the school district. Although the court was not faced with the question of residence outside the zone but within the district, the language in Davis regarding the "political subdivision to be served" suggests, in my opinion, that art. 19, §§ 3 and 4 would not be construed to go so far as to require residence in the school zone from which the board member was elected. Clearly, school districts are political subdivisions. See Muse v. Prescott School Dist., 233 Ark. 789, 790,349 S.W.2d 329 (1961). As stated in Muse, supra, quoting from an 1870 case, "`[t]heir functions are wholly of a public nature, and their creation a matter of public convenience and government necessity, and in order that they may the better subserve the public interest, certain corporate powers are conferred upon them.'" 233 Ark. at 791, citing Granger and Wifev. Pulaski County, 26 Ark. 37 (1870). See also Arkansas HighwayCommission v. Clayton, 226 Ark. 712, 292 S.W.2d 77 (1956), adopting the following definition of a political subdivision, as defined by the Supreme Court of New Jersey:
 [P]olitical subdivisions have been defined as that `they embrace a certain territory and its inhabitants, organized for the public advantage, and not in the interest of particular individuals or classes; that their chief design is the exercise of governmental functions; and that to the electors residing within each is, to some extent, committed the power of local government, to be wielded either mediately or immediately within their territory for the peculiar benefit of the people there residing.'
226 Ark. at 715, quoting Allison v. Corker, 67 N.J.L. 596, 52 A. 362.
It seems clear that the single-member zones which are established for school election purposes would not be deemed to fall within this definition. The zones constitute the boundaries for the election of board members. Their purpose is to enable representation of racial minorities on the board "in proportions reflected in the district as a whole." A.C.A. § 6-13-1205(c)(1). The zones are thus clearly established "in the interest of particular individuals or classes." See definition of "political subdivision" supra. Further suggesting that they do not fall within this definition is the fact that no distinct corporate powers are separately conferred on the zones. See Granger and Wife, supra. It cannot reasonably be contended that the "chief design" of the single-member zones is the "exercise of governmental functions[.]" Muse, supra. The electors within the zones are not vested with any particular local governmental powers. Id. The governmental power resides in the school district as a whole.[3]
In conclusion, therefore, in the absence of a clear statutory requirement to the contrary, it is my opinion that the school board member who no longer resides in the zone is nevertheless eligible to retain his position on the board.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] A possible exception exists in the case of districts with an average daily attendance in excess of 24,000. See A.C.A. § 6-13-607
(Repl. 1993). Subsection (d)(1) of § 6-13-607 states that members of the boards of such districts "shall . . . [b]e elected by zone and bequalified electors of the zones from which elected. . . ." (Emphasis added.)
[2] Article 19, § 3 states that "[n]o persons shall be elected to or appointed to fill a vacancy in any office who does not possess the qualifications of an elector."
[3] This probably distinguishes the single-member school zones from city wards from which city aldermen are elected. See, e.g., A.C.A. §14-43-307 (Supp. 1995). Some corporate powers are conferred on the residents of city wards as reflected, for example, in the fact that local option elections may be held in a designated ward. See A.C.A. § 3-8-205
(Supp. 1995). Indeed, this office has previously opined that the qualified elector requirement under art. 19, § 3 requires residence in the ward. Op. Att'y Gen. 92-218 at 2.