The Honorable David Dunn State Representative Post Office Box 208 Forrest City, AR 71336-0208
Dear Representative Dunn:
I am writing in response to your request for my opinion on the following questions:
Is an A P commissioner, an appointed position, an officer of the municipality for which he serves?
Does an A P commissioner have to be a qualified elector of the city for which he serves?
What constitutes a "qualified elector" for a city of the first class?
Is the 1997 amendment to ACA 26-75-605, which allows A P commissioners to reside in the county rather than within the city limits, constitutional? If not, what, if anything, can be done to make the 1997 amendment legal?
Can a city pass an ordinance which says that by definition an A P commissioner is not considered an officer of the city for which he serves?
RESPONSE
In my opinion the answer to your first question is "yes." I believe the answer to your second question is likewise "yes," notwithstanding the fact that A.C.A. § 26-75-605(a) requires only some of the commissioners to be residents of the city. (Being a "resident" is a necessary condition of being a "qualified elector.") As discussed below, I believe the provisions of this statute authorizing the appointment of commissioners who are not qualified electors of the city are constitutionally suspect as possibly violating Ark. Const. art. 19, § 3. With respect to your third question, I believe a "qualified elector" of a city is an individual who is (1) domiciled in the city; (2) at least 18 years old; (3) not an *Page 2 
unpardoned convicted felon; and (4) not an "idiot or insane person" as contemplated in Ark. Const. art. 3, § 5. The law is not entirely clear regarding whether the individual must in addition actually be registered to vote. For reasons discussed below, I believe the answer to your fourth and fifth questions is "no."
Question 1: Is an A P commissioner, an appointed position, an officer of the municipality for which he serves?
In my opinion, the answer to this question is "yes." See Ark. Ops. Att'y Gen. Nos. 2003-278; 95-296 and 91-283 (all opining that A P commissioners are city "officers").
As my immediate predecessor pointed out in Ark. Op. Att'y Gen. No.2003-138:
"In determining whether a particular position constitutes an `office' or mere employment, the Arkansas Supreme Court has consistently adhered to the view that an office is created by law, with the tenure, compensation, and duties of the position also usually fixed by law. See, e.g., Haynes v. Riales, 226 Ark. 370, 290 S.W.2d 7 (1956); Maddox v. State, 220 Ark. 762, 249 S.W.2d 972 (1952); and Martindale v. Honey,259 Ark. 416, 533 S.W.2d 198 (1976). Additionally a public officer ordinarily exercises some part of the state's sovereign power. Maddox,220 Ark. at 763; Martindale, 259 Ark. at 419. Other typical factors signifying a public office include the taking of an oath of office, the receipt of a formal commission, and the giving of a bond, although the court has consistently maintained that no single factor is ever conclusive. Haynes v. Riales, supra; Maddox v. State, supra."
Quoting Ark. Ops. Att'y Gen. Nos. 96-241 and 94-031; see also Ark. Op. Att'y Gen. No. 2001-127. As noted in Ark. Op. Att'y Gen. No. 98-029:
It has been stated that sovereign powers are a necessary requisite of a public office. Bean v. Humphrey, 223 Ark. 118, 264 S.W.2d 607 (1954). The sovereign authority which the officer is entitled to exercise will determine whether it is an office under the municipal, county, state or federal government.
The appointment of advertising and promotion commissioners is authorized pursuant to A.C.A. § 26-75-605 (Supp. 2005), which is contained within the Advertising and Promotion Commission Act (the "Act"), A.C.A. §§ 26-75-601 through-618 (Repl. 1997 Supp. 2005). Although the Act contains no provisions regarding a bond, a salary, the taking of an oath of office or the receipt of a formal commission by a commissioner,[1] the position itself, as well as its tenure and duties, are all created by law. See A.C.A. §§ 26-75-605 and-606 (Supp. 2005). Perhaps most significantly, the commissioners are charged with significant discretion in the exercise of the state's sovereign powers. Subject to certain statutory guidelines, the commission alone determines the manner in which tax and bond revenues deposited into the advertising and promotion fund will be used. See A.C.A. §§ 26-75-606(a)(1)(A) and-606(a)(2)(A) ("The commission is the body that determines the use of the city advertising and promotion fund."). Subject to statutory jurisdictional directives and minimal supervision from other municipal officials, A.C.A. § *Page 3 26-75-606 affords the commission virtually complete control in the expenditure of the tax revenues authorized by A.C.A. § 26-75-602(a) (Repl. 1997) and the bond revenues authorized by A.C.A. § 26-75-608
(Repl. 1997). See Ark. Op. Att'y Gen. No. 2002-239 (noting the discretion vested in the commission with regard to the expenditure of revenues); accord Ark. Op. Att'y Gen. No. 2006-207.
Given this statutory grant to a commission of the state's sovereign authority, I believe a commissioner clearly qualifies as an officer. I am only reinforced in this conclusion by the fact that A.C.A. §26-75-605(c)(2) expressly refers to the position of commissioner as an "office." I further believe he clearly serves on behalf of the city. Section 26-75-602 specifically authorizes a city-wide tax to support the commission, and A.C.A. § 26-75-605(c)(1) specifically references the "city advertising and promotion commission" (emphasis added). Specifically in terms of your question, then, I believe a commissioner is indeed "an officer of the municipality for which he serves."
Question 2: Does an A P commissioner have to be a qualified elector of the city for which he serves?
In my opinion, the answer to this question is "yes," notwithstanding the fact that A.C.A. § 26-75-605(a) suggests otherwise.
Subsection 26-75-605(a) of the Arkansas Code provides as follows regarding the residency of commissioners:
Any municipality levying a tax pursuant to this subchapter shall create by ordinance a municipal advertising and promotion commission, to be composed of seven (7) members, as follows:
(1)(A) Four (4) members shall be owners or managers of businesses in the tourism industry, and the owner or manager shall reside in the levying municipality or, if the governing body of the municipality provides for by ordinance, the owner or manager may reside outside of the municipality but within the county in which the municipality is located.
(B) At least three (3) of these members shall be owners or managers of hotels, motels, or restaurants and shall serve for staggered terms of four (4) years;
(2) Two (2) members of the commission shall be members of the governing body of the municipality and selected by the governing body and shall serve at the will of the governing body; and
(3) One (1) member shall be from the public at large who shall reside within the levying municipality or in the county of the levying municipality and shall serve for a term of four (4) years.
(Emphases added.) Under this statute, the four members who are owners or managers of *Page 4 
tourism-related businesses must reside within the city or, with city-council approval, may reside within the county in which the city is located; the two members of the commission who are also members of the council must reside in the city, since only a city resident may serve as a council member, see A.C.A. §§ 14-43-309 (Repl. 1998) and14-42-201(c)(2) (Supp. 2005); and the commission member from the public at large, with or without city-council approval, may reside anywhere within the county in which the city is located. Nowhere in this statute does the phrase "qualified elector" appear; rather, the statute focuses solely on residence as a qualification to hold office as a commissioner, and it requires that a commissioner be a resident of the city he serves only in limited instances.
However, notwithstanding the provisions of this statute, permitting an out-of-city resident to serve on an A P commission may well be precluded by operation of Ark. Const. art. 19, § 3, which provides that "[n]o person shall be elected to or appointed to fill a vacancy in any office who does not possess the qualifications of an elector." The Arkansas Supreme Court has interpreted the requirement of "qualifications of an elector," as used in Article 19, § 3, to include residence in the political subdivision in question. See Benton v. Gunter, 342 Ark. 543, 29 S.W.3d 719 (2000); Davis v. Holt, 304 Ark. 619,804 S.W.2d 362 (1991); Charisse v. Eldred, 252 Ark. 101, 477 S.W.2d 480
(1972); Thomas v. Sitton, 213 Ark. 816, 212 S.W.2d 710 (1948); compare A.C.A. § 14-47-134(a)(1)(A) (Supp. 2005) (providing that in a municipality with a city-manager form of government, only "qualified electors" may fill vacancies on municipal boards and commissions).
Although an A P commissioner is an appointed officer, it is not immediately clear whether he would necessarily fall within the ambit of Article 19, § 3, which refers only to elected officers and to officers "appointed to fill a vacancy." The question arises, then, whether Article 19, § 3 applies to an appointed officer even if the officer was appointed to the position in the first instance for a complete term. One of my predecessors directly addressed this question as follows in Ark. Op. Att'y Gen. No. 98-041:
It may be argued . . . whether this provision has applicability to appointive, rather than elective offices. It clearly applies to persons holding elective offices (i.e., those "elected"), and also to persons "appointed to fill a vacancy." If an office is always appointive, and not regularly elected . . . it could be argued that such a person is neither "elected" nor "appointed to fill a vacancy" for purposes of this provision; and as such the "qualified elector" requirement, which includes residence, does not attach. [Footnote omitted]. The issue of art. 19, § 3's applicability to appointive offices is addressed by the Arkansas Supreme Court decision of Thomas v. Sitton, 213 Ark. 816,212 S.W.2d 710 (1948) in which the court appears to apply this provision to an appointed nonresident marshal in a second class city. The court also held that the nonresident marshal should have been elected rather than appointed, and it is unclear on which of these bases the court ruled him ineligible for service. In addition, the Arkansas Supreme Court has stated that an appointed city manager must, pursuant to art. 19, § 3, be a resident of the city at the time of his appointment. McClendon v. Board of Health, 141 Ark. 114, 216 S.W. 289 (1919). See also Ops. Att'y Gen. 95-296; 93-095; 92-045; 91-383; and 91-283 (applying art. 19, § 3 to appointive city offices). *Page 5 
In Ark. Op. Att'y Gen. No. 2003-056, my immediate predecessor responded to this analysis as follows:
Notwithstanding the uncertainty for the basis of the ruling in Sitton, in McClendon, the court unequivocally declared that an appointed city manager was an officer subject to the residency requirements of article 19, § 3. Accordingly, I believe the requirement likewise applies to an appointed recreation commissioner. In Ark. Op. Att'y Gen. No. 91-283, one of my predecessors offered the following analysis in the course of questioning the constitutionality of former A.C.A. § 26-75-602(h), which purported to authorize the appointment from anywhere in the county of the four tourism-industry representatives on an A P commission:
[T]he legislature has plenary authority over municipalities, Nahlen v. Woods, 255 Ark. 974, 504 S.W.2d 749 (1974), and can exercise its legislative authority in any manner it sees fit, being constrained only by the provisions of the United States and Arkansas Constitutions. See generally Murphy v. Epes, 283 Ark. 517, 678 S.W.2d 352 (1984). It is my opinion, however, that in this instance, the newly adopted subsection (h)(2) violates the Arkansas Constitution.
* * *
[Article 19, § 3] applies to city officers, and has been held to require the officer's reside in the political subdivision to be served by the official. Thomas v. Sitton, 213 Ark. 816, 212 S.W.2d 710 (1948), and Davis v. Holt, 304 Ark. 619, 804 S.W.2d 362 (1991). It is my opinion, additionally, that a member of a city advertising and promotion commission is an "officer." See generally, Thomas, supra, Davis, supra, Rhoden v. Johnston, 121 Ark. 317, 181 S.W. 128 (1915), and Charisse v. Eldred, 252 Ark. 101, 477 S.W.2d 480 (1972). It is also my opinion that a member of such a commission serves the city. The legislature has authorized the creation of "city" advertising and promotion commissions. See A.C.A. § 26-75-602 (f) (Cum. Supp. 1991). Thus, if a prospective Advertising and Promotion Commission member is not a qualified elector of the City of Hot Springs, his or her appointment to fill a vacancy on the Commission would appear to be violative of the Arkansas Constitution.
Accord Ark. Op. Att'y Gen. No. 2003-278 (opining that A P commissioners must be qualified electors pursuant to Article 19, § 3). I concur completely with my predecessors' analyses.
Finally, I must briefly address what variety of "resident" might also be a "qualified elector" subject to Article 19, § 3. In considering this question, my immediate predecessor quoted with approval the following from an earlier opinion:
". . . The Arkansas Supreme Court has interpreted the requirement of `qualifications of an elector' to include a requirement of residence in the political subdivision in question. See *Page 6 
Thomas v. Sitton, 213 Ark. 816, 212 S.W.2d 710 (1948).
"The court has recognized that the term `residence' can be rather nebulous, in that a person can conceivably have more than one residence, or can have a temporary residence. See Davis v. Holt, 304 Ark. 619,804 S.W.2d 362 (1991). In construing the term `residence' for purposes of applying Article 19, § 3 of the Arkansas Constitution, however, the Arkansas Supreme Court appears to have equated `residence' with `domicile.' Davis, supra; Charisse v. Eldred, 252 Ark. 101,477 S.W.2d 480 (1972). The term `domicile' reflects the idea of both physical presence and an intent to remain permanently. Davis, supra; Black's Law Dictionary at 435 (5th ed., 1979); Op. Att'y Gen. No. 94-208.
"It should be noted that the question of domicile (and therefore the question of residence in the context of Article 19, § 3) is one of fact that must be determined on the basis of all of the relevant factors. Davis, supra; Charisse, supra. One of the most important factors to be considered in determining a person's domicile (i.e., residence) is intent. Id. I have previously opined that other factors that are relevant to this consideration are location of residence ownership; voter registration information; location of the exercise of voting rights; location of personal property tax assessment; and other statements and conduct of the person involved. See Op. Att'y Gen. No.88-208."
Ark. Op. Att'y Gen. No. 2004-125, quoting Ark. Op. Att'y Gen. No.96-265; see also Ark. Op. Att'y Gen. No. 95-296 (equating "residence" with "domicile" for purposes of office-holding and opining that only a "resident" thus defined may serve on an A P commission). Inasmuch, then, as a "qualified elector" of a political subdivision must be "domiciled" therein, and further inasmuch as only a qualified elector may hold an office under the terms of Article 19, § 3, any individual domiciled outside the city could not serve as a city A P commissioner, notwithstanding any provision to the contrary in A.C.A. § 26-75-605(a). Accord Ark. Op. Att'y Gen. No. 2003-278. With respect to commissioners residing within the city, a finder of fact intent on determining whether they were "qualified electors" thereof might well explore the factual question of whether they were in fact "domiciled" within the political subdivision they served.
Question 3: What constitutes a "qualified elector" of a city of the first class?
Subsection 7-1-101(21) of the Arkansas Code (Supp. 2005), located in a subchapter of the Code dealing with election laws, defines the term "qualified elector" as follows:
"Qualified elector" means a person who holds the qualifications of an elector and who is registered pursuant to Arkansas Constitution, Amendment 51[.]
The referenced "qualifications" are not neatly defined in any one statute or constitutional provision. However, after considering multiple sources, one of my predecessors determined the applicable criteria to be as follows: a person must be (1) at least 18 years old; (2) a United States citizen; (3) eligible and registered pursuant to Amendment 51; (4) not an unpardoned convicted felon; and (5) not an "idiot or insane person" under *Page 7 
Ark. Const. art. 3, § 5. Ark. Op. Att'y Gen. No. 92-342. As noted in my response to your previous question, he must further be a domiciliary of the political subdivision in which he will be registered.
With respect to the third item in the above list of qualifications, I must note that a question exists whether a "qualified elector" must actually be registered in order to warrant the designation. To be sure, the above quoted definition set forth at A.C.A. § 7-1-101(21) clearly indicates that he must. However, although this definition suggests that registration is a condition of being a "qualified elector," subsection 9(a) of Amendment 51 suggests the obverse, listing being a "qualified elector" as a precondition to registering to vote. Particularly in light of this confusion, I am not prepared to opine that the statutory definition of "qualified elector" set forth at A.C.A. § 7-1-101(21), contained in a subchapter of the Code focusing on voting requirements, is controlling in interpreting the usage of this term in Article 19, § 3, which focuses exclusively on the qualifications to hold office. I must note, however, that the Arkansas Supreme Court in dictum has suggested that the definition currently codified at A.C.A. § 7-1-101(21) would apply to establish the qualifications to hold various county offices. Allred v. McCloud, 343 Ark. 35, 40, 31 S.W.3d 836 (2000).[2]
See also Roberts v. Priest, 334 Ark. 503, 518, 975 S.W.2d 850 (1998) (Corbin, J., concurring) (relying on the statutory definition of "qualified elector" to reject the argument that an individual need only be eligible to become a "legal voter" in order to qualify as a valid signatory on an initiative petition). Under the circumstances, I can do no more than note that the law would benefit from judicial or legislative clarification.
Question 4: Is the 1997 amendment to ACA 26-75-605, which allows A P commissioners to reside in the county rather than within the city limits, constitutional? If not, what, if anything, can be done to make the 1997 amendment legal?
In my opinion, Acts 1997, No. 913, § 1, which amended A.C.A. §26-75-605 to allow out-of-city but in-county domiciliaries to fill certain commissioner positions, is constitutionally suspect in that it may well violate Ark. Const. art. 19, § 3. See response to question 2, supra. As an executive officer, I must respectfully decline to respond to the second part of your question, which raises an issue that should rightly be addressed by the legislature.
Question 5: Can a city pass an ordinance which says that by definition an A P commissioner is not considered an officer of the city for which he serves?
In my opinion, the answer to this question is "no."
As noted in my response to your first question, I believe an A P commissioner is a city officer as a matter of state law. It is axiomatic that state law will govern the activities of a local commission administering a sales tax so long as the state law is constitutional. See generally Ark. Const. art. 12, § 4; A.C.A. § 14-43-6-6(a) (Repl. 1998); City of Fort Smith v. Fort Smith Housing Authority, 256 Ark. 254,506 S.W.2d 534 (1975). Moreover, as the court noted in Burke v. Elmore,341 Ark. 129, 132-33, 14 S.W.3d 872 (2000): *Page 8 
This court has often stated that municipalities are creatures of the legislature and as such have only the power bestowed upon them by statute or by the Arkansas Constitution. Jones v. American Home Life Ins. Co., 293 Ark. 330, 738 S.W.2d 387 (1987). See also City of Ft. Smith v. O.K. Foods, Inc., 293 Ark. 379, 738 S.W.2d 96 (1987); City of Little Rock v. Cash, 277 Ark. 494, 644 S.W.2d 229 (1982). Additionally, this court has held that any substantial doubt concerning the existence of a power in a municipal corporation must be resolved against the City. Recently, this court summarized what powers can be exercised by a municipality:
Cities have no inherent powers and can exercise only (1) those expressly given them by the state through the constitution or by legislative grant, (2) those necessarily implied for the purposes of, or incident to, these express powers and (3) those indispensable (not merely convenient) to their objects and purposes.
Cosgrove v. City of West Memphis, 327 Ark. 324, 326, 938 S.W.2d 827,828 (1997).
In my opinion, as discussed above, the General Assembly has enacted legislation charging A P commissioners with duties that under accepted judicial criteria clearly qualify the commissioners as municipal officers, see Ark. Ops. Att'y Gen. Nos. 2003-278; 95-269 and 91-283; indeed, as also noted above, the Code itself characterizes the position of commissioner as an office. A.C.A. § 26-75-605(c)(2). Given these facts, I believe it would be patently impermissible for a city by ordinance to recharacterize a commissioner as something other than a city officer.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Subsection 14-42-106(a) of the Code (Supp. 2005) mandates that city officers, whether elected or appointed, take an oath of office. Subsection (c) of this statute further authorizes the city council, at its discretion, to require city officers to post a bond. As one of my predecessors pointed out in Ark. Op. Att'y Gen. No. 95-320, a fidelity bond is mandatory for officers of a city of the first class handling municipal financial matters. A.C.A. § 14-58-308(a) (Repl. 1998).
[2] I characterize the court's pronouncement on this score as "dictum" because the substance of the court's holding in Allred was only that the county could not by initiative impose requirements for office-holding more restrictive than those defined by state law. Id.