Cite as 2022 Ark. 57

# SUPREME COURT OF ARKANSAS

**No.** CV-21-434

|  |  |
|---|---|
|  | **Opinion Delivered:** March 10, 2022 |
| TRACY JOHNSON, GINA RAMBO, JAMES R. "RICK" BRIGHT, GREG MOON, AND KAREN PRYOR<br><br>APPELLANTS<br><br>V.<br><br>CAROL WRIGHT, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS PAST CHAIRMAN AND CURRENT AND PAST MEMBER OF THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; JEFF CARTER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A MEMBER AND CURRENT CHAIRMAN OF THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; JAMES DEVITO, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A MEMBER [OF] THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; MELISSA GREEN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A MEMBER [OF] THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; HARRY MEYER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A MEMBER [OF] THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; PATRICK BURNETT, | APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT [NO. 08WCV-21-19]<br><br>HONORABLE CHARLES SCOTT JACKSON, JUDGE<br><br>AFFIRMED. |

INDIVIDUALLY AND OSTENSIBLY IN HIS OFFICIAL CAPACITY AS AN APPARENT MEMBER [OF] THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; THE EUREKA SPRINGS CITY ADVERTISING AND PROMOTION COMMISSION; THE CITY OF EUREKA SPRINGS, ARKANSAS; ROBERT D. "BUTCH" BERRY, INDIVIDUALLY AND AS MAYOR OF THE CITY OF EUREKA SPRINGS, ARKANSAS; KIM STRYKER, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS CHIEF ADMINISTRATIVE ASSISTANT TO MAYOR BUTCH BERRY; STATE AUTO MUTUAL INSURANCE COMPANY; AND PHILADELPHIA INDEMNITY INSURANCE COMPANY

APPELLEES

**COURTNEY RAE HUDSON, Associate Justice**

Appellants Tracy Johnson, Gina Rambo, James R. "Rick" Bright, Greg Moon, and Karen Pryor appeal the Carroll County Circuit Court's order denying their motion for an emergency injunction that sought the removal of three members of the Eureka Springs City Advertising and Promotion Commission (CAPC). For reversal, appellants argue that (1) appellee Carol Wright's appointment to the CAPC violated article 19, section 3, of the Arkansas Constitution, and (2) the appointments of appellees Melissa Green and Harry Meyer to the CAPC violated Arkansas Code Annotated section 14-42-107(a)(2) (Supp. 2021). We affirm.

The City of Eureka Springs (City) created the CAPC when it approved Ordinance 936 in 1972. The CAPC was organized under Act 185 of 1965 as amended by Act 30 of the First Extraordinary Session of 1965 and further amended by Act 123 of 1969. At its inception, the CAPC was composed of seven members, all of whom were required to be qualified electors of the City. Four members were to be hotel, motel, or restaurant owners or managers. The mayor and two members of the city council filled the remaining three positions. Ordinance 936 vested commissioners with the authority to adopt rules and regulations for the operation of the CAPC and to alter or amend those rules and regulations. Over the years, Ordinance 936 was amended several times, but it always called for the CAPC to be composed of, in part, two members of the city council.

In July 2007, the City approved Ordinance 2060, which adopted Arkansas Code Annotated section 26-75-601 et seq. (Repl. 2020), as the enabling legislation under which the City collected the Advertising and Promotion Tax (A&P tax). The City collects about $1.5 million annually pursuant to the A&P tax. Ordinance 2060 provided that the CAPC was to be composed of seven members; four business owners or managers in the tourism industry who were to reside in the City, two members of the City's governing body, and one qualified elector who resided in the city to be appointed by the mayor from the public at large. The two members of the governing body were to serve at the will of the governing body. In January 2015, the City approved Ordinance 2220, which amended its code regulating the CAPC. Ordinance 2220 provided that the CAPC was to be composed of seven members: four tourism-industry members, an at-large member who was to reside in Carroll County, and two members who were required to be "members of the governing

3

body of the municipality and selected by the governing body and serving at the will of the governing body." The ordinance authorized the mayor to appoint the at-large member.

At the January 11, 2021, regular City Council meeting, nominations were made for appointments to CAPC positions five and six. All six members of the council were present: appellees Green and Meyer, Bill Ott, Autumn Slane, Terry McClung, and LauraJo Smole. As to position five, Green and Meyer initially received two votes each. After a second round of voting resulted in Green and Meyer receiving three votes each, Mayor Butch Berry cast the deciding vote for Green, and Green was appointed to CAPC position five. As to position six, there were initially three votes for Meyer, and one each for McClung, Ott, and Slane. A second vote yielded the same results, and Mayor Berry cast the fourth vote for Meyer, which resulted in Meyer's appointment to position six. Both Green and Meyer were sitting city council members at the time of their appointments. Appellee Carol Wright holds position seven, the CAPC at-large position. Wright was appointed to that position in June 2017. At that time, and all times thereafter, Wright has been a Carroll County resident, but she has not lived within the Eureka Springs city limits at any time relevant to this appeal.

On January 27, 2021, the CAPC voted to remove appellant Moon from his position as a CAPC commissioner. Appellants Rambo and Johnson were thereafter terminated from their employment with the CAPC. Appellants filed a lawsuit alleging, among other things, that Moon's removal was illegal. On May 26, 2021, the circuit court entered an order directing that Moon be reinstated. That did not resolve all the issues, and the case proceeded. On June 3, 2021, appellants filed a motion for an emergency injunction in which they asserted that Wright, Meyer, and Green, had been illegally appointed to the CAPC and

4

requested that the circuit court order their removal. Appellants argued that Wright's appointment to the CAPC pursuant to Arkansas Code Annotated section 26-75-605(a)(2) violated article 19, section 3, of the Arkansas Constitution. They further argued that Meyer's and Green's appointments pursuant to Arkansas Code Annotated section 26-75-605(a)(2) violated Arkansas Code Annotated section 14-42-107(a)(2). On June 14, 2021, appellants filed an amended complaint making the claims set forth in that motion.

At a June 25, 2021, hearing, the circuit court issued an oral order denying the motion for an emergency injunction. Appellants filed a motion to reconsider the decision as to Wright only. On July 19, 2021, the circuit court entered a written order again denying appellants' motion. Specifically, the circuit court held that in light of Arkansas Code Annotated section 26-75-605 permitting the at-large CAPC commissioner to be appointed from the county, article 19, section 3, of the Arkansas Constitution did not prevent Wright's appointment to the at-large position on the Eureka Springs CAPC even though she was not a resident or an elector of the City of Eureka Springs at the time of her appointment or service on the CAPC. With respect to Meyer and Green, the circuit court concluded that Arkansas Code Annotated section 26-75-605 permitted the appointment of two city-council members to the CAPC despite appellants' arguments that their appointments were prohibited by Arkansas Code Annotated section 14-42-107. That order also denied appellants' motion to reconsider. On July 29, 2021, the circuit court entered a second order denying appellants' motion to reconsider. On August 11, 2021, appellants filed a notice of appeal as to the denial of their motion for injunctive relief and their motion for reconsideration. This interlocutory appeal is proper pursuant to Ark. R. App. P.–Civil

5

2(a)(6) (2021), which provides for an interlocutory appeal of an order "by which an injunction is granted, continued, modified, refused, or dissolved[.]"

This is an appeal of an order denying injunctive relief. Decisions to grant or deny an injunction are reviewed for an abuse of discretion, but we give the circuit court's interpretation of law no deference. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 2014 Ark. 517, 451 S.W.3d 584. An injunction may be granted if the petitioner shows (1) that it is threatened with irreparable harm; (2) that this harm outweighs any injury that granting the injunction will inflict on other parties; (3) a likelihood of success on the merits; and (4) that the public interest favors the injunction. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 353 Ark. 902, 120 S.W.3d 89 (2003).

This appeal requires us to interpret our statutes and constitution. In interpreting the constitution on appeal, our task is to read the law as it is written and interpret it in accordance with established principles of constitutional construction. *Zook v. Martin*, 2018 Ark. 293, 557 S.W.3d 880. It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction de novo. *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Id*. As to statutes, acts of the legislature are presumed constitutional, and the party challenging the statute has the burden of proving otherwise. *Landers v. Stone*, 2016 Ark. 272, 496 S.W.3d 370. The primary rule of statutory construction is to give effect to the intent of the drafting body. *White v. Owen*, 2021 Ark. 31, 617 S.W.3d 241. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language.

6

*3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of the Am. Legion, Dep't of Ark., Inc.*, 2018 Ark. 91, 548 S.W.3d 137. When the language of a statute is plain and unambiguous, we determine the drafter's intent from the ordinary meaning of the language used. *Id.* Finally, in construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. *Robert D. Holloway, Inc. v. Pine Ridge Addition Residential Prop. Owners*, 332 Ark. 450, 453, 966 S.W.2d 241, 243 (1998).

Appellants first challenge Wright's appointment to the CAPC. According to appellants, the circuit court essentially allowed Arkansas Code Annotated section 26-75-605(a)(3) to "trump" article 19, section 3, of the Arkansas Constitution. When Wright was appointed, Arkansas Code Annotated section 26-75-605(a)(3) provided that

> (a) Any municipality levying a tax pursuant to this subchapter shall create by ordinance a municipal advertising and promotion commission, to be composed of seven (7) members, as follows:
>
> . . . .
>
> (3) One (1) member shall be from the public at large who shall reside within the levying municipality or in the county of the levying municipality and shall serve for a term of four (4) years.

Although appellants concede that section 26-75-605(a)(3) on its face allows Wright's appointment, they insist that it conflicts with article 19, section 3, of the Arkansas Constitution, which provides in its entirety:

> No person shall be elected to or appointed to fill a vacancy in any office who does not possess the qualification of an elector.

The "Qualifications of electors" are found in article 3, section 1, of the Arkansas Constitution, which provides in relevant part:

(a) Except as otherwise provided by this Constitution, any person may vote in an election in this state who is:

(1) A citizen of the United States;

(2) A resident of the State of Arkansas;

(3) At least eighteen (18) years of age; and

(4) Lawfully registered to vote in the election.

(b)(1) In addition to the qualifications under subsection (a) of this section, the General Assembly shall provide by law that a voter shall:

(A) Present valid photographic identification before receiving a ballot to vote in person; and

(B) Enclose a copy of valid photographic identification with his or her ballot when voting by absentee ballot.

It is undisputed that Wright meets the qualifications of an elector as set forth in article 3, section 1. Nevertheless, appellants contend that our court has construed article 19, section 3, as requiring a person to reside in the political subdivision that he or she seeks to serve. They therefore claim that Wright's appointment was a violation of article 19, section 3, and cite three cases in support of their argument. All three are distinguishable. At a minimum, each involved elective offices and not appointed positions. Moreover, in each instance, the challenged official's eligibility was inconsistent with certain statutory requirements. First, in *Thomas v. Sitton*, 213 Ark. 816, 212 S.W.2d 710 (1948), we held that a city marshal was an "officer" within the meaning of article 19, section 3, and that the marshal was required to live in the city limits. However, in *Sitton*, we also noted that a statute required the marshal

to be elected by the "qualified voters of the city." *Id.* at 821, 212 S.W.2d at 712. Likewise, in *Davis v. Holt*, 304 Ark. 619, 622, 804 S.W.2d 362, 364 (1991), a statute purported to authorize a person whose residential property spanned two school districts to serve on the school board of either. After reviewing "our prior decisions on the matter of residency in the context of elections," we held that a successful candidate for a school board was not qualified to hold office because he did not reside in the district. *Id.* at 624, 804 S.W.2d at 365. Our decision in *Davis* was informed by Arkansas Code Annotated section 6-14-108 (Supp. 1989), which provided that "[a]ll persons who have registered to vote in the manner prescribed by . . . Amendment 51 . . . shall be deemed qualified electors of the school district in which they reside." Although we said that we have interpreted article 19 section 3 to require residence in the political subdivision to be served by the elected official, *Davis* also involved article 19, section 4, which states that "[a]ll civil officers for the State at large shall reside within the State, and all district, county and township officers within their respective districts, counties, and townships[.]" We noted that, at that time, a school district was "for election purposes[,]" the same as a township. *Davis*, 304 Ark. at 625, 804 S.W.2d 364. *See also* Ark. Code Ann. § 6-14-107(a) (1987). *Davis* ultimately turned on the meaning of the term "residence" in the "context of [a] school election case." *Davis*, 304 Ark. at 624, 804 Ark. at 365. Finally, in *Charisse v. Eldred*, 252 Ark. 101, 477 S.W.2d 480 (1972), the parties conceded that a successful candidate for city alderman was required to have been a qualified elector "of the city" by being a resident of the state for one year prior to election to be qualified to serve. *Id.* at 102, 477 S.W.2d at 480. We concluded that substantial evidence supported the circuit court's decision that the residency requirement had not been met

because of the amount of time the official had spent in California and the fact that he voted in California elections. Here, there is no statute requiring Wright to be a resident of the City. Moreover, Wright was not seeking election to a Eureka Springs office, nor was she appointed to fill a vacancy in an elected office. Instead, she was appointed to a commission position that was authorized not only by statute but also by a Eureka Springs municipal ordinance. Thus, the circuit court correctly concluded that Wright's CAPC appointment was not constitutionally prohibited.

For their second point, appellants assert that the circuit court erred when it determined that Green and Meyer were qualified to serve as CAPC commissioners despite being sitting council members at the time of their appointments. Green and Meyer were appointed to the CAPC pursuant to Arkansas Code Annotated section 26–75–605(a)(2), which provides that "[t]wo (2) members of the commission shall be members of the governing body of the municipality and selected by the governing body and shall serve at the will of the governing body[.]" Appellants contend that Green's and Meyer's appointments violate Arkansas Code Annotated section 14-42-107(a)(2), which provides that "[a] council member shall not be appointed to any municipal office, except in cases provided for in this subtitle, during the time for which he or she may have been elected."

When statutes seemingly conflict, it is blackletter law for statutory construction to give effect to the specific statute over the general. *Searcy Farm Supply, LLC v. Merchants & Planters Bank*, 369 Ark. 487, 256 S.W.3d 496 (2007). Likewise, if two legislative acts relating to the same subject matter conflict with each other, the later act controls. *Kyle v. State*, 312 Ark. 274, 849 S.W.2d 935 (1993). Application of these two canons of construction compels

us to conclude that Green's and Meyer's appointments were not barred by section 14-42-107(a)(2).

First, although section 14-42-107(a)(2) prohibits city council members from being appointed to another municipal office while they are serving on a city council, it is a statute of general applicability. Arkansas Code Annotated section 26-75-605(a)(2) is more specific to the issue in this appeal, and it not only allows the appointments of council members to an advertising and promotion commission, but it also requires them. Next, it is true that section 14-42-107(a)(2) was amended by Act 879 in 2017. That is more recent than the last amendment to section 26-75-605(a)(2). However, the modifications made by Act 879 were not substantive in nature. Act 879 amended section 14-42-107(a)(2) and provides as follows:

> ~~No alderman or~~ A council member shall <u>not</u> be appointed to any municipal office, except in cases provided for in this subtitle, during the time for which he or she may have been elected.

It is clear that Act 879's changes to section 14-42-107(a)(2) did little more than update the statute's terminology. If, as appellants argue, the General Assembly had wanted to prohibit sitting city council members from serving on an advertising and promotion commission, it could have simply repealed Arkansas Code Annotated section 26-75-605(a)(2). Yet, it did not do so, and Arkansas Code Annotated section 26-75-605(a)(2) is a more recent enactment than any substantive rule found in section 14-42-107(a)(2). Therefore, section 14-42-107(a)(2) does not provide a basis to disqualify Green and Meyer.

In conclusion, the circuit court correctly determined that Wright's appointment as a CAPC commissioner was constitutionally permissible and that section 14-42-107(a)(2) did

not preclude Green's and Meyer's appointments. The circuit court therefore did not err in denying appellants' motion for emergency injunctive relief.

Affirmed.

WOOD, J., concurs.

**RHONDA K. WOOD, Justice, concurring.** I join the majority decision but write separately because I'm frustrated with our court's inconsistent use of the rules of constitutional interpretation. For decades, this court has used mixed phrases to explain how we interpret unambiguous words in our constitution. Sometimes we have said words "should be given their obvious and natural meaning."[1] Other times, we have said words "must be given [their] plain, obvious, and common meaning."[2] Still other times, the court has dropped the word "plain" and used only the phrase "obvious and common meaning."[3] The court has not explained these interpretative shifts, and it must be difficult for practitioners to understand the court's approach to constitutional interpretation. The majority opinion perpetuates this confusion by stating, "Language of a constitutional provision that is plain and unambiguous must be given its *obvious and common meaning*."[4] But here, we do not need to search for the meaning of "electors" because the drafters of

---

[1]*Brown v. City of Stuttgart*, 312 Ark. 97, 101, 847 S.W.2d 710, 712 (1993); *Brewer v. Fergus*, 348 Ark. 577, 583, 79 S.W.3d 831, 834 (2002).

[2]*Oldner v. Villines*, 328 Ark. 296, 302, 943 S.W.2d 574, 576 (1997) (citing cases using the natural-meaning language).

[3]*Worth v. City of Rogers*, 341 Ark. 12, 26, 14 S.W.3d 471, 478–79 (2001).

[4]Citing *First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005) (emphasis added).

the constitution defined the term in another section, telling us precisely what that word originally meant.[5] Thus, we should not misguide practitioners with the belief that we are looking for the "obvious and common meaning." Rather, we must apply the original meaning the drafters gave us.

*Parker Law Firm*, by: *Tim S. Parker*, for appellants.

*Amanda LaFever*, for appellees.

---

[5] Ark. Const. article 3, § 1.